## DANIELS v. TEARNEY.

1. The convention of the State of Virginia passed, April 13, 1861, an ordinance entitled "An Ordinance to provide against the sacrifice of property and to suspend proceedings in certain cases," whereby, if a debtor, against whom there was an execution in the hands of an officer, offered bond and security for the payment of debt, interest, and costs, when the operation of the ordinance should cease, his property should be restored to him. If he offered no bond, the property was to be restored to him without lien, unless it would bring its appraised value as of the date of Nov. 6, 1860. No executions were, after the date of the ordinance, to be issued against residents except in favor of the State. The convention passed, April 18, 1861, an ordinance of secession. A., against whom an execution was issued March 21 of that year, availed himself of the provisions of the ordinance of April 13, by giving the requisite bond and security. The judgment against him remaining unpaid and the ordinance having ceased to operate, suit was brought on the bond. *Held*, that the obligors are estopped from setting up that, by reason of anything contained in the ordinance, the bond is invalid.

2. *Home Insurance Co. v. City Council of Augusta* (93 U. S. 116) and *United States* v. *Hodson* (10 Wall. 395) cited and approved.

ERROR to the Circuit Court of Jefferson County, State of West Virginia.

The facts are stated in the opinion of the court.

*Mr. Daniel B. Lucas* for the plaintiffs in error.
*Mr. Charles J. Faulkner*, contra.

MR. JUSTICE SWAYNE delivered the opinion of the court.

This is a writ of error, brought to reverse a judgment of the Supreme Court of Appeals of the State of West Virginia.

The case, as disclosed in the record, may be sufficiently stated for the purposes of this opinion, as follows: —

On the 18th of April, 1861, a convention of the State of Virginia passed an ordinance of secession, and on the 30th of that month a law entitled "An Ordinance to provide against the sacrifice of property and to suspend proceedings in certain cases." This ordinance declared that thereafter no execution (except in favor of the Commonwealth and against non-residents) should be issued, and that no sales should be made under deeds of trust or decrees without the consent of the parties interested, until otherwise provided by law; and that where executions were in the hands of the officer, whether levied or not, if the debtors should offer bond and security for the payment of the debt, interest, and costs, when the operation of the ordinance should cease, the property should be restored and the bond should be returned, as in the case of a forthcoming bond, and should be a lien on the realty of the obligors. If the debtor offered no bond, his property was to be appraised by three freeholders, at its value on the 6th of November, 1860, and unless the property would sell for the amount of the valuation, it should be restored to the debtor without lien.

The suit was brought in the Circuit Court of Jefferson County, State of West Virginia, by Tearney and Wilson, executors. of Colin C. Porter. The declaration sets forth that the defendants, on the first day of June, 1861, made their joint and several bond, whereby they bound themselves to pay to the plaintiff the sum of $1,597.18 when thereunto requested; and that there was a condition affixed to the bond, which was, "that whereas, on the twenty-fifth day of March, 1861, a writ of *fieri facias* was issued from the clerk's office in the name of Colin C. Porter against Benjamin F. Daniels, for $747.92, with interest from the second day of January, 1860, until paid, and $31.97 costs; if, therefore, the said B. F. Daniels should pay the debt, interest, and costs, when the operation of the ordinance before mentioned should cease, then the obligation to be void, otherwise to be in full force." It was averred that the operation of the ordinance had long since ceased, and yet that the defendants, though often requested so to do, had not paid the said sums of money or any part thereof, whereby an action had accrued, &c.

Among other pleas, the defendants filed one *in hæc verba:* —

"For further plea to this action, the defendants say, that the

bond in the declaration mentioned was executed by Benjamin F. Daniels, a citizen of the State of Illinois, as principal, and by William B. Daniels and D. M. Daniels, as his securities, in pursuance of the requirements and conditions of a statute passed in violation of the Constitution of the United States, heretofore, to wit, on the 30th of April, 1861, by the convention of the State of Virginia, and that said statute was subsidiary to and in aid of and in furtherance of the objects and policy of the ordinance of secession passed theretofore by said convention, to wit, on the ——— day of April, 1861, in violation of the Constitution of the United States.

"And the defendants say, that they rely on the fact that said statute and ordinance were in violation of and repugnant to the Constitution of the United States for their defence and plea in this case; and that they are unconstitutional the defendants are ready to verify."

The plaintiff demurred. The court sustained the demurrer, and the defendants excepted. The parties thereupon waived a jury and submitted the case to the court, and a judgment was entered in favor of the plaintiff.

The defendants removed the case to the Supreme Court of Appeals for review. That court affirmed the judgment, and this writ of error was thereupon sued out.

The objection raised as to the jurisdiction of this court is untenable.

In *Home Insurance Co.* v. *City Council of Augusta* (93 U. S. 116), we said: "Where a judgment or decree is brought to this court by a writ of error to a State court for review, the case, to warrant the exercise of jurisdiction on our part, must come within one of three categories:—

"1. There must have been drawn in question the validity of a treaty or statute of, or authority exercised under, the United States; and the decision must have been against the claim which either was relied upon to maintain.

"2. Or there must have been drawn in question a statute of, or authority exercised under, a State, upon the ground of repugnance to the Constitution, or a law or treaty, of the United States; and the decision must have been in favor of the validity of the State law or authority in question.

" 3. Or a right must have been claimed under the Constitution, or a treaty, or law of, or by virtue of a commission held or authority exercised under, the United States; and the decision must have been against the right so claimed. Rev. Stat. 132, sect. 709; *Sevier* v. *Haskell*, 14 Wall. 15; *Weston* v. *City Council of Charleston*, 2 Pet. 449; *McGuire* v. *The Commonwealth*, 3 Wall. 385."

The plea is neither full nor technical, but it does aver the invalidity of the statute 'under which the bond was taken, because it was in violation of the Constitution of the United States, and was passed " in aid and furtherance of the objects and policy of the ordinance of secession," and that the defendants " rely on the fact that said statute and ordinance were in violation of, and repugnant to, the Constitution of the United States, for their defence and plea in this case." This implies clearly that the defendants claimed, in addition to what was averred, that the bond was void in every aspect, and that they had a right, by reason of the premises, to exemption from liability under it. What is thus averred in a pleading is as effectual as if it were expressed. *Haight* v. *Holley*, 3 Wend. (N. Y.) 258.

It thus appears that there was drawn in question the authority of the sheriff, exercised under a law of the State, in taking the bond, and that the decision was in favor of the validity of that authority; and that there was also a right of exemption from liability, claimed under the Constitution of the United States, and that the decision was against the right so claimed. These claims give us jurisdiction. Whether they are well founded remains to be considered. Jurisdiction is only " the right to hear and determine." The result of its exercise is the judgment of the court.

That the ordinance of secession was void is a proposition we need not discuss. The affirmative has been settled by the arbitrament of arms and the repeated adjudications of this court. *Texas* v. *White*, 7 Wall. 700; *Hickman* v. *Jones*, 9 id. 197; *Dewing* v. *Perdicaries*, 96 U. S. 193. It was supplemented and complemented by the statute authorizing the bond to be taken. The latter was one of a series of acts passed by the secession convention, all looking to the conflict of arms which was foreseen to be approaching. They were intended to prepare the State for the struggle, and were means to that end.

The saving in the statute as to executions in favor of the Commonwealth and against non-residents was characteristic.  It obviously contemplated the confiscation of the property of the latter as a war measure.  We cannot doubt that the statute was invalid by reason of the treasonable motive and purpose by which its authors were animated in passing it.  The provision that no executions should issue, and that no sales should be made under decrees or deeds of trust without the consent of the parties interested, " until otherwise provided by law," was clearly in conflict with the contract clause of the national Constitution.  *Bronson* v. *Kinzie*, 1 How. 311 ; *McCracken* v. *Hayward*, 2 id. 608 ; *Edwards* v. *Kearzey*, 96 U. S. 595.

The circumstances which surrounded the convention and controlled its action are a part of the history of the times, and we are bound to take judicial notice of them.  *Brown* v. *Piper*, 91 U. S. 37.

We have already pointed out the infirmities of the statute.  One of them is expressly embodied in the bond.  The condition is that the obligors shall pay when the statute under which it was taken "*ceases*."  That is, that payment was to be made at the time of its cessation, and not before.  In the mean time, the statute was to operate as a stay law, and the condition of the bond was framed accordingly.  This, as we have shown, was directly repugnant to the constitutional provision which forbids the impairment of contracts by State laws.  The bond, as a statutory instrument, cannot have more validity than the statute which prescribed it as the means of giving effect to the statute in the way it was intended to operate.  To hold the bond valid as a statutory bond, and the statute void, would be an inversion of reason.  Viewed in this light, it is void for exactly the same reasons that the statute is void.  They rest on the same basis, and must stand or fall together.  The creditor was not to be consulted.  His assent was not required.  So far as he was concerned, the sheriff could proceed *in invitum*.  The option to give the bond or not was with the debtor.  The presence or absence of the creditor, and his assent or dissent, were alike immaterial.  He was powerless in any event to control the result.

The cases are numerous in which it has been held that

where a bond contains conditions, some of which are legal and some illegal, and they are severable and separable, the former may be enforced and the latter disregarded. *United States* v. *Hodson*, 10 Wall. 395. But this bond does not belong to that class. The condition is a unit, and indivisible. There are no separate elements into which it can be resolved. It must be considered as an entirety, and can be viewed in no other light. As a statutory bond, therefore, the instrument is clearly void. Whether it is void also as a voluntary bond is a point upon which the opinions of all the members of the court are not entirely in accord. We pass from the subject without further remark, because, irrespective of that question, there is a view decisive of the case, in regard to which we are unanimous and our minds are free from doubt.

Conceding the bond to have been wholly void in both aspects, it does not by any means follow that it could not thereafter, under any circumstances, be enforced as between the parties, or that there is such error in the judgment that it must necessarily be reversed.

A corporation is liable for negligent and malicious torts, including libel, assault and battery, malicious prosecution, and false imprisonment. In such cases the plea of *ultra vires* is unavailing. The corporation is estopped from setting up such a defence. *National Bank* v. *Graham*, 100 U. S. 699.

The same result is produced in like manner in many instances where a corporation, having enjoyed the fruits of a contract fairly made, denies, when called to account, the existence of the corporate power to make it. *Railway Company* v. *McCarthy*, 96 U. S. 258.

The principle of estoppel thus applied has its foundation in a wise and salutary policy. It is a means of repose. It promotes fair dealing. It cannot be made an instrument of wrong or oppression, and it often gives triumph to right and justice, where nothing else known to our jurisprudence can, by its operation, secure those ends. Like the Statute of Limitations, it is a conservator, and without it society could not well go on.

If parties are *in pari delicto*, the law will help neither, but leaves them as it finds them. But if two persons are in *delicto*, but one less so than the other, the former may in many cases

maintain an action for his benefit against the latter.    *White* v. *Franklin Bank*, 22 Pick. (Mass.) 181.

It is not necessary here to consider the extent and limitations of the rule. They are fully examined in the authority referred to. In the case in hand the obligee must be deemed wholly innocent, because the contrary is not alleged, and it does not appear. *Quod non apparet, non est. De non apparentibus et non existentibus, eadem est ratio.* " If the contract be executed, however, that is, if the wrong be already done, the illegality of the consideration does not confer on the party guilty of the wrong the right to renounce the contract; for the general rule is, that no man can take advantage of his own wrong, and the innocent party, therefore, is alone entitled to such a privilege." 1 Story, Contr., sect. 610; *Taylor* v. *Weld*, 5 Mass. 108.

It is well settled as a general proposition, subject to certain exceptions not necessary to be here noted, that where a party has availed himself for his benefit of an unconstitutional law, he cannot, in a subsequent litigation with others not in that position, aver its unconstitutionality as a defence, although such unconstitutionality may have been pronounced by a competent judicial tribunal in another suit. In such cases the principle of estoppel applies with full force and conclusive effect. *Ferguson* v. *Landram*, 5 Bush (Ky.), 230. See *Ferguson* v. *Landram*, 1 id. 548; *Van Hook* v. *Whitlock*, 26 Wend. (N. Y.) 43; *Lee* v. *Tillotson*, 24 id. 337; *The People* v. *Murray*, 5 Hill (N. Y.), 468; *City of Burlington* v. *Gilbert*, 31 Iowa, 356; *B. C. R. & M. R. R. Co.* v. *Stewart*, 39 id. 267.

In the case first cited, an injunction was applied for to prevent the collection of a tax authorized by an act of the legislature passed during the late civil war, to enable the people of a county to raise volunteers and thus avoid a draft for soldiers, and that object had been accomplished. In disposing of the case the court well asked, " Upon what principle of exalted equity shall a man be permitted to receive a valuable consideration through a statute, procured by his own consent or subsequently sanctioned by him, or from which he derived an interest and consideration, and then keep the consideration, and repudiate the statute?"

In *United States* v. *Hodson* (*supra*) this court said : " When a bona is voluntarily entered into and the principal enjoys the benefits it was intended to secure, and a breach occurs, it is then too late to raise the question of its validity.    The parties are *estopped* from availing themselves of such a defence."

Not to apply the principle of estoppel to the bond in this case would, it seems to us, involve a mockery in judicial administration and a violation of the plainest principles of reason and justice.

*Judgment affirmed.*

NOTE. — Another case between the same parties was argued at the same time as was the preceding case.    MR. JUSTICE SWAYNE remarked, that there were no material points of difference between them, and that the opinion in the first case was decisive of the second.

*Judgment affirmed.*