12L 583
2pi 438

THE STATE *v.* NASHVILLE, CHATTANOOGA & ST. LOUIS RAILWAY.

TAXATION. *Sale of Railroads. Immunities. Rights of purchasers.* Where a railroad, exempt for a certain period from taxation, is sold under proceedings instituted by the State to enforce its lien or statutory mortgage, such proceedings being authorized by statute and providing for the sale of the road, franchises, etc., and providing that all the rights, privileges and immunities appertaining to the franchise, shall be transferred to and vested in said purchaser and decree of sale so directing, the State is estopped to tax said road during the time the original company was exempt from taxation. In such a case the immunity from taxation of the company passed by sale to the purchaser.

FROM DAVIDSON.

Appeal from the Chancery Court at Nashville. A. G. MERRITT, Ch.

CHAMPION & HEAD and J. B. DANIEL for complainant.

EAST & FOGG for defendant.

FREEMAN, J., delivered the opinion of the court.

This bill is filed by the State to recover taxes assessed against the railroad company from 1875 to 1881, inclusive, said tax never having been paid, for reasons hereinafter stated.

The facts necessary to present the questions to be decided, are brief as follows:

The Nashville & Northwestern Railroad Company was incorporated by an act of the Legislature passed January, 1852, the company organized and the road constructed under the same. The precise date of its completion is not shown in this record. It suffices to say, it is conceded, that it had not been twenty years at the time these taxes were assessed, or when the bill was filed.

By section 36 of said charter it was provided: "The capital stock of said company shall be forever exempt from taxation, and the road with all its fixtures and appurtenances, including the work-shops, warehouses, and vehicles of transportation shall be exempt from taxation for the period of twenty-five years from the completion of the road."

In 1870, the Legislature passed an act authorizing a bill to be filed in the name of the State, to enforce the lien or statutory mortgage in favor of the State, retained by what is known as the General Internal.

Improvement law of 1852.   The railroads had made
default in payments of interest on bonds issued for
their benefit by the State, to aid in their construc-
tion, and it was deemed advisable by the Legislature
that the security provided as indemnity to the State
in this event, should be enforced, and for this purpose
the roads, with all their appertaining properties, be
sold.

A bill was filed in the chancery court at Nash-
ville for this purpose in the name of the State, to
which the companies, their stockholders, and all others
having rights to be affected by the sale of the prop-
erty, are assumed to be made parties.   We need not
cite the provisions of this act in detail, as it has been
so often before the courts they are familiar to all in-
terested in this litigation.

It suffices, that by the 10th section of the act it
was provided: "That upon the sale of any of the
franchises of either of the railroad companies by the
commissioners under the provisons of this act, *all* the
rights, privileges and *immunities* appertaining to the fran-
chise so-called, under its act of incorporation and
amendments thereto, *and* the general improvement law
of the State, and acts amendatory thereof shall be
*transferred to and vested in such purchaser,* and the
purchaser shall hold said franchise subject to all liens
and liabilities in favor of the State, as were provided
by law against the railroad companies."

As we have said, a bill was filed in pursuance of
this act by the State, the prayer of said bill being,
after the usual prayer for process, etc.: "That all

proper accounts be ordered and taken as required by the act, that in case any of such railroad companies should decline a contest with your order in regard to a sale of the State's interest in these roads, a decree may be made accordingly, and the commissioners appointed · by the Legislature authorized to proceed at once to sell said interest, a specific value being put upon the State's interest in each of such roads by the decree in pursuance of the 8th section of the act."

In addition it was prayed that the court "should define as may be thought proper, what shall be the *rights*, duties and liabilities of a purchaser of the State's interest in said roads, and what shall be the reserved rights of the companies, stockholders and others respectively, as against said purchasers, and then a sale of the roads, with all their property, franchises and rights," and then concludes with the usual prayer for general relief.

On the 6th of July, 1871, a general decree was made in this cause, in which, among other roads, · the Nashville & Northwestern road was ordered to be sold, its indebtedness having been previously ascertained. In this decree the court proceeds in accord with the statute and the prayer of the bill to define the rights of the companies, the roads of which were being sold, as well as the rights of the purchasers of any such roads, other than the companies themselves, etc., as to these purchasers, and such companies, it was decreed "the said companies and their stockholders will cease to have any further right, legal or equitable, in and to the property, rights and franchises so sold, and said

purchaser, other than the company, will take the road, property and franchises, free from all claims whatever, except those of the State reserved by contract of sale and the act under the provisions of which sale is made." ·

As to the rights of the purchasers, under said decree, and what they would get under the same, it was decreed that "*all the rights, privileges and immunities appertaining to the franchises so sold under* its act of incorporation and amendments thereto, and the general improvement laws of the State and amendments thereof, shall be transferred and vest in the purchaser."

It suffices to add, that under this decree, by various proceedings, the Nashville & Chattanooga Company became the purchaser of the Nashville & Northwestern road, since which time it has been operating the same, by virtue of said purchase, having obtained under certain proceedings in the chancery court at Nashville, as stated in the present bill, in 1873, a change of the name of this road to that of Nashville, Chattanooga & St. Louis Railway.

This sale when reported to the court by the commissioners, was afterwards confirmed, and "all the right, title, claim and interest of all the parties to this suit in and to the Nashville & Northwestern Railroad, its property and franchises, including the right to build said branch from Huntingdon to Jackson, without any responsibility on the part of the State be, and the same are hereby divested out of them and vested in the Nashville & Chattanooga Railroad Company, in absolute right, *title,* all the rights and

privileges, as *heretofore* determined by the decrees of this court in this cause."

The reference to the right to build the road from Huntingdon to Jackson is specially introduced into this decree, as appears from the record, because there seems to have been at first some doubt as to whether it would otherwise pass, and on this mooted question, on motion of Mr. Fogg, one of the commissioners for the State, it had been previously ordered that this right be specifically "transferred to said purchasers, as embraced in its purchase—if in the opinion of the counsel for the State—said privilege fairly and properly belongs and passes under said sale of said railroad, without any responsibility upon the part of the State." In this final decree it was proper to specify this right as passing to show the conclusion reached by the counsel for the State, and thus close a question that otherwise would have been left open. This is all that can be drawn from the facts in reference to this recital.

From this statement of the facts it is readily seen what the defense of the defendant would be. It claims that by virtue of its purchase, and the terms of the decree under which the sale was made, as well as the decree vesting title, in fact by force of the whole proceeding, the State of Tennessee and railroad companies being parties, the one sole complainant, the other defendant, that it took the railroad purchased, with the immunity from taxation existing at the time in the corporation known as the Nashville & Northwestern Railroad Company. The time in which said exemption was to continue not having expired, it is denied

that the company is liable to pay any taxes on the property included in the exemption purchased under said decree.    This is the real issue between the parties.

The case has been argued with marked ability, so that there is no difficulty in defining the issue, and we may add, in view of the consideration that has been given the question heretofore by this court, as well as the Supreme Court of the United States, no great difficulty in reaching the proper solution.    In doing this we have but to run the straight line of legal right through the case and see where that leads, and then simply to declare the result.    Whether it shall be for the one party or the other, is to this court a matter of perfect indifference.

Before discussing the main question on which the case turns it may not be improper to say, that in the opinion of the writer, the power as a general proposition of the State to sell or give away forever, or for a limited period, the untramelled right of taxation, is one not possessed by a State Legislature, unless expressly granted (and I know of no constitution in which such grant is found).    On this question I have always believed the dissenting argument of Judge Miller, of the Supreme Court of the United States, concurred in by Chief Justice Chase and Judge Field, in the case of *Washington University* v. *Rouse*, 8 Wall. R., 443, was not only unanswered, but un-answerable.    He says: "We do not believe that any legislative body, sitting under a State constitution of the usual character, has the right to sell, give, or to bargain away forever the taxing power of the State.

This is a power which in modern political societies, is absolutely necessary to the continued existence of any such society. To hold, then, that any one of the annual Legislatures can by contract deprive the State forever of the power of taxation, is to hold that they can destroy the government which they are appointed to serve, and their action in this regard is strictly lawful. It cannot be maintained that this power to bargain away, for an unlimited time, the right of taxation, if it exists at all, is limited, in reference to the subject of taxation. In all the discussion of this question in this court and elsewhere, no such limitation has been claimed. If the Legislature can exempt in perpetuity one piece of land, it can exempt all land. If it can exempt all land, it can exempt all other property. It can exempt as well persons as corporations, and no hindrance can be seen in the principle adopted by this court, to rich corporations, as railroads and express companies, or rich men, making contracts with the Legislatures as they best may, and with such appliances as it is known they are, for perpetual exemption from all the burdens of supporting the government."

"The result," he adds, "of such a principle, under the growing tendency to special and partial legislation, would be to exempt the rich from taxation, and cast all the burden of the support of government, and the payment of its debts, on those who are too poor or too honest to purchase such immunity."

These are words of wisdom, and such weight, as to my mind are conclusive of the question. It was

an evil day when the contrary was recognized as es-
tablished law 'by the Supreme Court of the United'
States, whose decisions are controlling over State tri-
bunals on this question of the obligation of contracts.
The tendency of the later decisions of that court, is.
at least against an extension, if they do not in a
marked degree limit the doctrine, and we may hope
this portends its ultimate overthrow by that enlight-
ened tribunal.

In a proper case, I think there are other consid-
erations growing out of our own State Constitution and'
its necessary implications that would forbid such ex-
emptions, certainly to all corporations or persons, except
those engaged in works of internal improvement—the
Legislature having express power by the Constitution
of 1834, and the duty declared to encourage "a well
regulated system of internal improvements." How this
is, we need express no definite opinion at present.

It suffices to say, that on this question we are con-
trolled by the decisions of the Supreme Court of the
United States in all its phases, so far as applicable to
the exemption now under consideration. Even should
we hold it now, unauthorized by the Constitution of
1834, the rule of that court, and well settled is, that the
law as expounded by the legislative and judicial de-
partments of the State, at date of making the contract
controls it, and it must be conceded, that such was
the case in our State.

That the exemption was existent in favor of the
Nashville & Northwestern road at the date of the sale,
and was held by that company as a right or *immu-*

*nity* by contract, protected by the provision of the Constitution of the United States against impairing the obligation of a contract, therefore beyond the legislative power of the State of Tennessee, must be taken as a conceded postulate in the discussion of this case.

Did this exemption or immunity pass by the sale and decree we have recited · to the Chattanooga company, as the purchaser, or was the right or immunity thus held destroyed by the decree made in that case? For such would be the practical effect of holding it did not pass.

In the case of *Wilson* v. *Gaines*, 9 Baxt., 546, it was held by this court, in an opinion by Judge Turney, that a grant in a charter of "all the rights and privileges" that had been conferred on another company, which last company had by its charter an exemption from taxation, did not confer this exemption on the company thus chartered.

It was also held that a sale of such a road with all its franchise, property, rights and privileges, would not carry an exemption, even if it existed, approving the two cases, and basing the conclusion of the court on the cases of *Mississippi & Tennessee Railroad Company* v. *The State*, and *East Tennessee, Virginia & Georgia Railroad Company* v. *Hamilton County*.

· The case of *Wilson* v. *Gaines* was affirmed by the Supreme Court of the United States (12 Otto, 421), in an opinion which expressly construes the decree made in the general railroad case at Nashville in the case of the road then in contest, not to have attempted to sell any thing more than the property of that com-

pany; that this was the construction put upon the case then before the court, standing as it did on demurrer, is beyond question. They therefore hold, the case of *Morgan* v. *Louisiana*, 93 U. S. (3 Otto), 217, conclusive of the question as thus presented. See also on general question, *Railroad Companies* v. *Gaines*, 7 Otto, 697.

At September term, before the decision of the case of *Wilson* v. *Gaines*, the case of *Railroad Company* v. *Hicks*, 9 Baxt., 442, came before this court. In an able and exhaustive discussion of the question, concurred in as to the main point by every member of the court, where a sale and decree under the bill filed at Nashville for sale of railroads, the same bill under which the present sale was had, it was definitely held that the decree of the court ordering and confirming the sale, ordering the sale of the entire property of the road with the "rights, privileges and franchises of the company," and declaring that a sale of the franchises of the company would "vest the purchaser with all the *rights, privileges* and *immunities* appertaining to the franchise by the charter and amendments, and pass to the purchaser an exemption from taxation," like the one now under consideration.

Judge McFarland said: "We are of opinion that the State having expressly provided for the adjudication of all these questions by the tribunal appointed, and the purchase having been made upon the faith thereof, the validity of the adjudication cannot now be questioned by the State." In reply to the agument, that conceding this, the effect of the decrees was not

38—VOL. 12.

to carry the exemption to the purchaser, he said: "It is manifest, that when the purchasers came to contract for the entire road and franchises, it was important to know, whether they were to have as purchasers, the right to use the property free from taxation as specified in the old charter. This was an important element in fixing the price. The property, with this exemption, was worth more than it would have been without it, a sale of the property and franchises without this exemption would practically have taken from the old company all that was valuable to it, and yet the purchaser would not acquire what the old company owned; the old company had the property and franchises with the exemption, while the new one would acquire the property and franchises without the exemption. This would be selling the entire property and franchises of the old company for the payment of its debt, and yet destroying an element of its value, refusing to give the old company the benefit of the exemption in the sale, and yet destroying its existence so far as of practical importance. By this means the exemption would be practically repealed, and the State allowed to resume the right of taxation over the property and franchises in question, which it could not have done had the old company continued to be the owner."

We can add nothing to the force of this argument. The only question on this aspect of the case is, whether we shall overrule this opinion, or follow it. It unquestionably decides the question now before us. The decrees before us are precisely the same, and in the same case. No one can read them without seeing

·that the intent on the part of the court was to declare that the purchaser took "all the rights, privileges and immunities," possessed by the old company. It is conceded by all authority and not denied by counsel, that this last road does include such an exemption. That the purchaser so understood, we· cannot doubt, without assuming a want of understanding of language too plain to be ·misunderstood. This being true, it would be manifest injustice and breach of faith on the part of the State, now to assert the right to tax the property thus sold, when on these facts, the purchaser has purchased and paid for it with this element of value attached to it, and was led so to do by a decree made in a case where the State was complainant, made under and by authority of its own statute.

If we needed additional authority to sustain the proposition that the word "immunity" ·would include the exemption from taxation, the case of *Trask* v. *McGuire*, 18 Wall., 405, is a definte adjudication on this question.

But it is earnestly argued that since the Constitution of 1870, which prohibits such exemption, as was possessed by the Nashville & Northwestern road, what was done in this case, was in effect the creation of, or grant of a new exemption in favor of the purchasing road, and therefore forbidden. The case of *Trask* v. *McGuire*, above cited, and other cases from the Supreme Court of the United· States, are cited in support of this argument. If the·-premise was correct, the conclusion would be sustained by these cases,· and would inevitably follow. But on looking at these cases

it will be seen, the first was a case where the exemption had been extinguished by the fact of purchase of the road by the State of Missouri, and then by the State sold to the company claiming the exemption, at a time when the Constitution of Missouri forbade the grant or creation of such an exemption.

In the other cases, the court held that by virtue of acts of the Legislature under which the companies making the claim, old companies were consolidated, under a new organic act, by which they became new corporations, the Constitution of these States forbidding such exemptions at the time, and so no such exemptions could be claimed in favor of the consolidated companies. Such are the cases of *Shields* v. *Ohio,* 95 U. S., 5 Otto's R., 319, and *Railroad Company* v. *Georgia,* 98 U. S., 8 Otto, 359.

This is all very clear, but the fact is, that in this case we have no such question before us on the facts in this record. The right to exemption had not been extinguished before the sale to the present company as in the Trask case; nor is it alleged or claimed in the bill, or shown by any thing in it, that there had ever been formed a new consolidated company under any action of the Legislature, or in fact any attempt to do so on the part of the company now claiming the exemption. The principle maintained is sound, but we have no such facts as make it applicable; on the contrary, at the time of the sale and decree, the Nashville & Northwestern company did have the contract of exemption in full force and protected from impairment by the Constitution of the United States. It

was, as said by Judge McFarland, and as we know, a valuable element of property held in connection with the franchise and road being sold, and was sold. The only question then would be whether the court had the power, under the act of the Legislature to sell and transfer this property, as held in the Hicks case, this could be done, and we have no doubt it was done in this case, and being done in a proceeding in which the State was the active party, on its own bill, and under a proceeding conducted by it, and for its benefit, it is not now in condition fairly to question the right thus obtained and paid for by the purchaser.

This disposes of the only questions of real weight pressed on our consideration by the able arguments we have had before us on the part of the State. We need but say in reference to one other, that is, that the purchase was not made under the bill and proceedings in the case mentioned against the railroads, but was a private purchase, that this is a mistaken view of what is shown abundantly by the record, and we do not deem it necessary to go into the details of the proceeding to sustain this conclusion.

The result is, we hold the exemption in contest passed to the purchasing road on the facts appearing in this record, and the bill of the State must be dismissed with costs, affirming the decree of the chancellor.