[Civ. No. 12162. First Dist., Div. One. Jan. 13, 1943.]

GEORGE G. MORRISON et al., Respondents, v. THOMAS LANDERS et al., Appellants.

Harry N. Grover for Appellants.

James M. Hanley and Herbert Chamberlin for Respondents.

WARD, J.—This is an appeal by defendants from a judgment in favor of plaintiffs canceling two notes executed by them to the former, and directing that payments made thereon be credited against another note, secured by a deed of trust. By the judgment defendants were restrained from foreclosing on the property until two weeks after the judgment had become final, the plaintiffs in that time to pay off the balance due on the note secured by the deed of trust, with interest.

In 1933 plaintiffs had outstanding against property, purchased by them from defendants in 1928, a mortgage to a San Francisco bank in the amount of $2,100, and a deed of trust to defendants in an amount of $2,607.02, both of which called for payments of principal and interest to be made monthly. Plaintiffs had difficulty in meeting these payments, and while foreclosure had not been threatened, when the Home Owners' Loan Act (12 U.S.C.A., §§ 1461-1463) was passed on June 13, 1933, for the purpose of assisting small home owners who, because of the then existing financial conditions, faced loss of their homes through inability to meet the charges due on mortgages on their home property, they sought to refinance their indebtedness. For that purpose they filed with such authority an application for a loan. The act authorized the Home Owners' Loan Corporation to issue bonds and to exchange them, with cash adjustments, for mortgages against small homes up to "80 per centum of the value of the real estate as determined by an appraisal made by the Corporation." (§ 1463(d).) It did not, however, compel mortgage holders to accept bonds of the corporation in exchange for their claims, and in this regard the application by plaintiffs for the loan was made with the assistance of defendants, they consenting to accept bonds in lieu of a portion of the money due them.

As applied to the property here involved, the act precluded the corporation from loaning thereon more than $2,960, 80 per cent of its appraised value of $3,700. Following negotiations, the actual amount loaned by it was $2,956.63 which was secured by a mortgage. The amount of the loan was disbursed by the corporation as follows: $2,063.33 in payment of the existing senior obligation at the bank, $93.00 in payment of delinquent taxes and expenses of refinancing, and $800 (in bonds) to defendants as junior mortgage holders. While the corporation in refinancing homes permitted junior

liens thereon in some instances, its rules required that the combined indebtedness against the home should not exceed the appraised value as determined by it. Based upon such rule, the defendants were also given a junior lien against the property in the form of a deed of trust in the amount of $740, the difference between the $3,700 appraised value, and the amount of the senior lien.

Defendants had in the meantime procured unsecured notes from plaintiffs, one for $1,050 and one for $95, representing the balance due them originally secured by the deed of trust executed in their favor.

Some time thereafter plaintiffs, claiming that at the time of the negotiations with the Home Owners' Loan Corporation it had been represented to them by the defendants that the above two notes were part of the transaction with the loan corporation and had been approved by it, demanded that all payments, amounting to $390.80, theretofore made thereon be applied on the secured note for $740. Defendants claimed and testified that from the time they were first approached on the matter they had advised plaintiffs that they were not willing to take any loss in connection with the loan, for which they held security, and a notation on their consent to accept bonds of the corporation included the following: "And further consideration of deed of trust and note as second lien for balance due." Upon their refusal to comply with plaintiffs' demand, the present suit was brought for cancellation of the two notes in question, the application of amounts paid thereon to the secured note, and that defendants be enjoined from taking any action in the matter of foreclosure of the deed of trust securing the $740 note, notice of default on which had been recorded and notice of sale by the trustee given.

In support of their appeal the appellants make several contentions, namely (1) that the respondents were not entitled to any equitable relief, because (a) they obtained the loan from the Home Owners' Loan Corporation by misrepresentation; (b) that, conceding the notes for $1,050 and $95 to be invalid because made and received in violation of the terms of the act, the parties thereto are *in pari delicto*, in which case the court will leave them where it finds them, granting relief to neither; (2) the trial court erred in applying all sums paid on the above two notes to the principal of the note for $740, thereby depriving defendants of inter-

est on that note to which they were legally entitled; (3) that certain findings are not supported by the evidence.

The first point presented may be disposed of by reference to the case of *McAllister* v. *Drapeau,* 14 Cal.2d 102 [92 P.2d 911, 125 A.L.R. 800], where the court said (pp. 109-110): " . . . a full disclosure of the amount and the terms of the proposed second lien would have to be made to the H.O.L.C. The securing of a second lien by the creditor without such disclosure is clearly in violation of the letter and spirit of the statute and regulations. . . .

"The obtaining of secret second liens by the creditor violates the basic public policy expressed in the act. The act was intended solely for the benefit of home owners who were in financial difficulties—no one else was eligible for its benefits. Any benefit to creditors was merely incidental. But if a creditor could lawfully exact a secret second lien from his debtor, in many cases this would confer the benefits of the act on the creditor rather than on the debtor. Thus, in every case where the terms of the secret second lien were such that the debtor was financially unable to pay off both the first and second, the holder of the second, upon default by the debtor, could foreclose his second lien, and the holder of the second would obtain the property subject to the mortgage of the H.O.L.C.—a fifteen-year amortized mortgage at a low rate of interest—a very favorable type of mortgage which at that time was not generally available. In this way the creditor could and would circumvent the policy of the act and would obtain benefits never intended for him. This is not an unlikely possibility when it is considered that the benefits of the act were only available to home owners who were already in default on their first mortgage." Cases are cited to the effect that secrecy is tantamount to fraud on the H.O.L.C. (See, also, *Shiver* v. *Liberty Building-Loan Assn.,* 16 Cal.2d 296 [106 P.2d 4]; *Woods* v. *Kern County Mut. etc. Assn.,* 34 Cal.App.2d 468 [93 P.2d 837]; *Richard R. Adams Co.* v. *Pacific States S. & L. Co.,* 34 Cal.App.2d 723 [94 P.2d 370]; *Rockwood* v. *Brown etc. Invest. Co.,* 51 Cal.App.2d 241 [124 P.2d 612].)

Appellants do not contend that, insofar as the statute here considered is concerned, there is any difference between a specific lienholder and a general lienholder. Their position is stated in their closing brief as follows: "In our opening brief we admitted that the established law of this state

was that 'where the holder of a lien on real property obtains a secret lien from one who has received a Home Owners' Loan under the provisions of the Home Owners' Loan Act for the difference between what the lienholder receives from the Home Owners' Loan Corporation and the amount of his original claim, and such fact is not disclosed to the Home Owners' Loan Corporation before the loan is granted, and the proceeds of the loan paid, such second lien is void as against public policy.' However, we did not say that the notes in question were obtained without disclosing that fact to the corporation within the purview of the decisions of this state.

"It is our position that the evidence shows that appellants gave the corporation sufficient information to put the corporation on notice that they were receiving the notes in question, and that this is all that is required to make the note transactions valid."

It is true that in the McAllister case the court was dealing with the validity of a specific secret second lien. However, the basic principle underlying the decision in that case is that the act is solely for the benefit of home-owners in financial difficulties; that "no one else was eligible for its benefits." The act was intended to promote the financing of indebtedness on homes so that the agreed payments could be made by owners who would otherwise face loss of their property. In the McAllister case, as in the present, the negotiations were "secret." The promissory notes herein, while unsecured, are part of the transaction involving a loan from the H.O.L.C. The method used was an attempt to circumvent the law, namely, to secure promissory notes, which, if legal, could furnish the basis for a judgment and bring about a situation repugnant to the terms of the act. █ Whether the lien is general or specific is immaterial if the purpose is to secretly exact from the owner an additional amount after cooperating with him to secure a Home Owners' Loan Corporation loan. Such secrecy is tantamount to fraud in actually obtaining a second lien, and consequently violates the spirit and intent of the statute. *Richard R. Adams Co.* v. *Pacific S. & L. Co., supra,* was a case in which cash and a promissory note were given the holder of a deed of trust to secure its consent to a Home Owners' Loan Corporation loan. A petition for hearing was denied by the Supreme Court.

█ In the McAllister case, the court further said (p. 112):

"The last point urged by appellant is that, admitting the note and second mortgage are void and illegal, the plaintiffs were participants in the illegal transaction, were therefore *in pari delicto,* and cannot, for that reason, secure affirmative relief. It is, of course, true that where parties are *in pari delicto* neither can secure affirmative relief at law or equity. But it is equally true that where one party is involved to some extent in the illegality, but where the second party is grievously at fault and the first party only slightly at fault the court will allow recovery of moneys paid by the first party under the executory contract. (*Smith* v. *Bach,* 183 Cal. 259 [191 P. 14]; *Woodham* v. *Allen,* 130 Cal. 194 [62 P. 398]; *Daniels* v. *Tearney,* 102 U.S. 415 [26 L.Ed. 187].)" (2 Pomeroy's Equity Juris., 5th Ed., § 403, p. 136.)

This above rule applies to the facts in the present case. In view of this conclusion it is not necessary to consider appellants' argument against the contention of respondents that the equitable principle that relief will be denied to one coming into court with unclean hands is here applicable.

Appellants claim that there is no evidence supporting findings that respondents were apprehensive of losing their home and that they, the appellants, had agreed to accept a second lien to secure the payment of the sum of $740, bonds of the Home Owners' Loan Corporation in the sum of $800, and to release all other claims and demands against respondents or said real property. While there may be some conflict in the evidence, there is testimony by respondent Julia Morrison that, before she made application for the loan, she was fearful of foreclosure by the bank, also that she was informed by the attorney for appellants that the proposed transaction had been "approved by the Home Owners Loan." There is further evidence of the "mortgagees' consent to take bonds" in the amount above mentioned. There is also some evidence that appellants gave respondents to understand that they were unwilling to suffer a loss in connection with the matter, but there is evidence that the Home Owners' Loan Corporation did not know of the unsecured notes. It was the right of the trial court to draw reasonable inferences from the circumstances surrounding the transaction.

The court found that "The agreement of defendants with the Home Owners' Loan Corporation to accept a second lien on the realty described in the complaint to secure the

sum of $740 and to accept bonds of said corporation and cash in the sum of $800, and the acceptance thereof by defendants, was an accord and satisfaction of all other obligations of plaintiffs to defendants.''

We quote further from the McAllister case (p. 111) : ''Several of the courts to which the problem here involved has been presented, in addition to holding the secret second mortgage illegal, have held that in signing the 'Mortgagee's Consent to Take Bonds,' above quoted, the creditor agreed to accept such bonds 'in full settlement' of his claim, and that such agreement constitutes an accord and satisfaction, a release or a novation. (*Cook* v. *Donner,* [145 Kan. 674 (66 P.2d 587, 110 A.L.R. 244)] ; *Chaves County Building & Loan Assn.* v. *Hodges,* [40 N.M. 326 (59 P.2d 671)].) The holding of these courts is sound. The agreement signed by the creditor was to accept the bonds 'in full settlement of the claim of the undersigned . . . and thereupon to release all the claim of the undersigned against said property.' The argument of *amici curiae* that this broad language only constitutes an agreement by the creditor to release his security and does not constitute an agreement to release the debt secured is unsound. In the instant case, at the time California Security Loan Corporation signed the consent, the debtor owed it but one debt, which was secured by the recorded first mortgage, and partially secured by the secret unrecorded second mortgage. By signing the consent, that company agreed to release its entire 'claim.' This could have no reasonable meaning other than that it was an unqualified agreement in writing to release the existing debt for the amount of bonds offered. This constitutes a valid release, and an accord and satisfaction. (§§ 1524, 1541, Civ. Code.)''

There is evidence to support the findings, and this ''court is without power to substitute its deductions for those of the jury or trial court.'' (*Juchert* v. *California Water Service Co.,* 16 Cal.2d 500, 503 [106 P.2d 886].)

■ Appellants contend that the trial court committed error in applying all of the money paid on the $1,050 and $95 notes, viz., the sum of $390.80, to the principal of the $740 note to the exclusion of interest due thereon. The legality of the $740 note is not in dispute, neither is the amount of the payments made. Respondents seek to justify the order of the trial court that the whole amount paid on the unsecured notes should be applied to the principal of the $740 note upon the theory that appellants became involuntary trustees

charged with the duty of making such application. The duty of the respondents in this regard would, however, apply as much to interest as to principal. If, as admitted by respondents, the legality of the $740 note is not in dispute, the $390.80 paid should accordingly be applied to both interest and principal.

The trial court is directed to modify the findings and the judgment in accordance with the views expressed herein, appellants and respondents to bear their respective costs on appeal. As modified the judgment will stand affirmed.

Peters, P. J., and Knight, J., concurred.