[Civ. No. 6914.   Third Dist.   Jan. 28, 1944.]

E. B. CAMPBELL, Respondent, v. THOMAS SUTTON et al.,
Appellants.

J. C. Webster for Appellants.

C. H. White, Louis Ferrari, G. D. Schilling and Keyes & Erskine for Respondent.

PEEK, J.—The plaintiff, as assignee of the Bank of America National Trust and Savings Association, brought an action to collect a note dated October 19, 1936, in the amount of $775, and to foreclose a crop and chattel mortgage of March 30, 1935, which mortgage secured said promissory note but had become worthless. A demurrer to the complaint was overruled and defendants answered, alleging in effect that the note sued upon was executed by mistake; that there was no consideration therefor in that it had been given in renewal of certain notes which had been paid and discharged through the proceeds of a loan made to defendants by the Federal Land Bank, and therefore such note was against public policy.

At the conclusion of the hearing the court found that defendants were indebted to plaintiff in the sum of $975.78. It is from such judgment that defendants now appeal.

The record discloses that the note in question was a renewal of two previous notes dated March 18, 1933, in the

amounts of $200 and $575 respectively, which in turn had been executed in renewal of the balance due on a note of March 21, 1928, secured by a crop and chattel mortgage of even date in the amount of $900. Defendants were also indebted to the bank in the sum of $3,575, secured by a deed of trust on defendants' farm. In order to refinance their indebtedness the defendants made application to the Federal Land Bank for a loan under the Emergency Farm Mortgage Act (12 U.S.C.A. § 1016).

The Land Bank, in its "notice of approval of loan," informed the defendants, "your application . . . has been approved in the amount of . . . $3,800.00. . . ." The notice also stated ". . . within six months from the date your loan is closed, furnish the Commissioner an itemized statement of purposes for which your loan funds have been used. Your acceptance of this loan is an agreement to that effect." On the reverse side of said notice appeared what was entitled "acceptance notice" which was dated approximately one month after the notice of approval, and contained the following: "I accept the loan and agree to conditions as above. (Signed) Adelaide M. Sutton—Thos. Sutton."

Also as a part of said notice of approval appeared the following: "Please give us the following information concerning all creditors, secured and unsecured, whose loans are to be paid by the funds received from this loan. . . ." The defendants appealed to Mr. Raffetto, assistant cashier of the Sonora Branch of the Bank of America, to assist in filling out this information. This he did but listing the Bank of America as a secured creditor in the amount of $3,500, and unsecured as to the $575 and $200 notes. On the reverse side of said notice of approval appeared the notation: "Approved on condition that you are able to arrange a scale down of all liens against this farm to an amount not to exceed $3,800. This will call for cooperation on the part of your creditors, and in view of the importance of this scale-down, it is required that releases or other definite evidence be furnished from your creditors as an indication that the indebtedness has been irrevocably compromised." The notice of acceptance was returned to the Land Bank together with a letter which had been dictated by said assistant cashier of the Bank of America to his stenographer and signed by the defendants, which letter in part, stated: ". . . Our debts are listed on

the reversal of this application and proper adjustments have been made with the bank. . . ." Some time thereafter a letter was received by the defendants from the Land Bank requesting information concerning what progress was being made "in arranging your scale down evidence. . . ." To this letter the Bank of America, again by said assistant cashier, informed the Land Bank, "We wish to report that some time ago we sent you in a notice for the acceptance of bonds and have agreed to accept the loan of $3,800.00 granted, subject to the necessary expenses to be deducted from the above amount." The escrow instructions of the Land Bank to the Sonora Abstract and Title Company in part, stated as follows: "We have in our files a statement from the following creditor of the borrower to the effect that it will accept the amount set after its name below, in full satisfaction of its existing claim: Bank of America National Trust and Savings Association $3800.00."

By affirmatively alleging that the note sued upon was in contravention of the act and therefore without consideration and against public policy, defendants assumed the burden of proving such allegations by a preponderance of the evidence. (Secs. 1869 and 1981, Code Civ. Proc.; *Rancho Santa Margarita* v. *Vail*, 11 Cal.2d 501 [81 P.2d 533].)

Defendants earnestly insisted at the trial of the action, and in their appeal to this court renew their contention that as the proceeds of the Land Bank loan paid to the Bank of America were intended to include the two notes of $575 and $200 in the scale down agreement, the said $775 note subsequently taken in renewal thereof was in contravention of said agreement and contrary to public policy and the intent of the Emergency Farm Mortgage Act; that unless the two notes in question were included in the refinancing there was nothing to scale down, and defendants would be in the same financial straits as before, in direct opposition to the primary purpose of the act, but that in any event even under the construction placed upon the wording of the preliminary negotiations by the Bank of America, and the notice of approval by the Land Bank, inasmuch as growing crops are a part of the land, said crop mortgage was a lien against the land and therefore was included with the note and trust deed as the indebtedness to be paid off by the loan from the Land Bank.

With defendants' last contention we cannot agree. It has been consistently held that growing crops are personal

property (*Marshall* v. *Ferguson,* 23 Cal. 65, 66; *Davis* v. *McFarlane,* 37 Cal. 634 [99 Am.Dec. 340]), and that crop mortgages executed under the provisions of section 2955 et seq. of the Civil Code do not affect in any degree the land upon which the crops covered by said crop mortgage are being grown, nor do such mortgages constitute a lien or charge upon the land. (*Congdon* v. *G. M. H. Wagner & Sons,* 207 Cal. 373 [278 P. 863]; *First National Bank of Oakdale* v. *Brashear,* 200 Cal. 389 [253 P. 143].)

However, the first point raised by defendants does present a contentious problem. Plaintiff's answer to defendants' argument is that the agreement was to scale down *only* the secured loan of $3,575, and that the note sued upon as well as the two notes for which it was a renewal, at all times have been considered as unsecured. The apparent reason for plaintiff's insistence that such loans were unsecured was the wording of the approval of the loan by the Land Bank that "liens against this farm" were to be refinanced, and any indebtedness which did not constitute a lien against the land was not included in the $3,800 loan. Therefore such renewal note could not be against the expressed public policy of the act.

The plaintiff's sole witness was Mr. Odgers, the business manager of the branch, who admittedly knew nothing of the facts surrounding the transaction in question. His testimony was limited to an identification of the notes in controversy. No further evidence was offered by plaintiff.

Counsel for defendants likewise failed to call Mr. Raffetto, the assistant cashier, who was the only employee of the bank conversant with the facts surrounding the transaction. He also failed to call a representative of the Land Bank. No evidence was introduced to show that the Land Bank, before turning over the $3,800, required evidence that the notes in question had been paid or other surrender required. Although the "notice of approval" stated that definite evidence was to be furnished from the creditor as an indication that the indebtedness had been irrevocably compromised defendants made no attempt at such a showing or that they had ever secured such evidence. The notice of approval also required the Suttons to furnish the Land Bank, within six months, an itemized statement of the purposes for which the loan funds were used but the record is void of evidence that such a statement was ever made.

The record further discloses that the note sued upon was dated October 19, 1936, more than two years after the culmination of the negotiations resulting in the reconveyance of the note and trust deed against the farm. The defendants paid interest on the $200 and $575 notes until the date of renewal. If the Federal Land Bank had discharged the notes by the $3,800 paid to the Bank of America, then the act of defendants in paying interest thereon for such period without protest was entirely incompatible with the contentions they now advance.

At the conclusion of the hearing the trial court specifically found that it was not true that the said $775 was without consideration nor was it true that it had been paid or discharged by the $3,800 loan of the Land Bank. Such findings are supported by the evidence, and therefore will not be disturbed on appeal without a clear showing to the contrary.

The cases cited by defendants in substantiation of their contention that the renewal note was against public policy are of little assistance to them under the facts herein presented. Each case so cited contains facts showing that the second note was obtained either by coercion, fraud, secrecy or other circumstances disclosing deliberate evasions of the purpose and intent of the act, and therefore was against public policy. In the present case no such showing has been made by the defendants.

This court is entirely in agreement with the cases so cited by defendants and in particular with the holding of the District Court of Appeal in the recent case of *Morrison* v. *Landers*, 56 Cal.App.2d 607 [133 P.2d 34]. The court therein stated that the act in question (H.O.L.C.) was intended solely for the benefit of home owners who were in financial difficulties; that no one else was eligible for its benefits; that any benefit to creditors was purely incidental, and that if any creditor could exact a second lien the effect would be to confer upon him, rather than the debtor, the benefits of the act. There is also a very obvious result which is mentioned in the case of *McAllister* v. *Drapeau*, 14 Cal.2d 102 [92 P.2d 911, 125 A.L.R. 800], and likewise cited by defendants, that if a creditor could legally exact a second lien, then in the event of the failure of the debtor to meet his obligations on both liens, the creditor could obtain the property subject only to a long term amortized obligation at an extremely low rate of interest, and in this way successfully circumvent the very

purposes of the act and obtain benefits never intended for him. Both cases ably review the economic situation necessitating the enactment of the Home Owner's Loan Act and the principles to be followed by the courts in construing matters arising thereunder which are identical with the problems presented by the Emergency Farm Mortgage Act. However, the record in the present case viewed in the most favorable light as regards defendants' contentions, presents but a conflict in the evidence and therefore further discussion of the principles enunciated in the cited cases would serve no useful purpose.

That there is evidence to support the findings of the trial court cannot be denied, and this court is therefore without power to substitute its deductions for those of the trial court. (*Morrison* v. *Landers, supra.*) ▇ Whether, as contended by defendants, the Land Bank made the loan on account of and in reliance upon their representations (or the Bank of America) that the debt to be scaled down was that represented by all of the three notes or whether the Land Bank knew that only the debt secured by the trust deed was being satisfied, were questions of fact for the trial court. Had that court found that the Land Bank made the loan on the understanding and condition that all three of the notes were being satisfied, it might well have held for defendants, and this court could not have said there was not evidence to sustain it. But the trial court did not so hold, and we cannot say that its conclusion to the contrary was without support.

The judgment is affirmed.

Thompson, J., and Adams, P. J., concurred.