No. 25,599.

V. M. HARRIS and I. W. HAYNES, copartners, doing business as HARRIS & HAYNES, *Appellees*, v. THE UNION PACIFIC RAILROAD COMPANY, *Appellant*.

### SYLLABUS BY THE COURT.

SHIPMENT OF GRAIN—*Loss in Transit—Conflicting Evidence—Facts for Jury*. It is the province of the jury to weigh the evidence submitted to it and to determine which of two conflicting views of the evidence has been established.

Appeal from Wyandotte district court, division No. 1; EDWARD L. FISCHER, judge. Opinion filed January 10, 1925. Affirmed.

*T. M. Lillard, Bruce Hurd, O. B. Eidson,* all of Topeka, and *A. L. Berger,* of Kansas City, for the appellant.

*William K. Ward,* of Kansas City, for the appellees.

The opinion of the court was delivered by

HARVEY, J.: This is an action to recover the value of wheat alleged to have been lost in transit when consigned for shipment over defendant's line of railroad. It is tried to a jury, who made special findings of fact and rendered a general verdict for plaintiff. The defendant moved to set aside some of the findings of fact, for judgment in its favor upon the findings notwithstanding the general verdict, and for new trial, all of which motions were overruled and judgment rendered for plaintiff. The defendant has appealed.

The plaintiff claimed a loss of wheat in the shipment of two cars. One of them was shipped from Colby, February 7, 1921. As to this car the evidence was that the wheat was weighed on Howe hopper scales in three drafts of 36,000 pounds each, making a total of 108,000 pounds of wheat placed in car. It was unloaded at Kansas City, Mo., February 15, where the grain was weighed by the state grain inspection department in two drafts of 87,780 pounds and 10,230 pounds, making a total of 98,010 pounds, showing a loss of 9,990 pounds. The agent of the plaintiff testified that he coopered the car before the wheat was loaded and considered it a good car; that after loading the grain he examined the car to see if it was leaking and tested it with a clawhammer, and did not observe any leakage of the car.

The other car was loaded at Quinter, Kan., February 17. The wheat was weighed over Fairbanks-Morse wagon track scales,

which showed that 88,000 pounds of wheat were put in the car. This car was inspected by the agent of the defendant, who issued the bill of lading, and he testified that plaintiff's employee coopered the car with paper, car liners and grain doors prior to loading it; that the wheat was shoveled into the car from wagons which had been weighed on the wagon scales, and immediately after plaintiff finished loading the car he sealed the door, and the car went forward toward destination without any grain having leaked from the car prior to leaving Quinter. This car, when unloaded at Kansas City February 26, 1921, and weighed by the state grain inspection department, was found to contain 78,800 pounds. There was evidence that the employees of the state grain inspection department at Kansas City inspected cars before and after unloading, and the record of the inspection of these two cars did not disclose any leakage or bad condition in either of them. There was evidence on behalf of defendant from the conductors who handled the respective cars in shipment, and from the head of the mechanical department at the several division points through which the shipments passed, that no accident had happened to the cars during shipment, no repairs made thereon, and that the records of their several inspections en route did not disclose any leakage of the cars or bad condition. Each of the cars had been in the Kansas City yards three or four days before being unloaded. Upon this evidence the jury returned findings of fact as follows:

"1. Q. Was car P. R. R. 86,870 in good, sound condition and suitable for the transportation of bulk wheat when it left Colby, Kan., for Kansas City, Mo., loaded with one of the shipments involved in this case? A. No.

"2. Q. Was car C. N. W. 141,928 in good, sound condition and suitable for the transportation of bulk wheat when it left Quinter, Kan., for Kansas City, Mo., loaded with one of the shipments involved in this case? A. No.

"3. Q. Did either of the cars mentioned in the preceding questions meet with any accident which would cause grain to leak from them and which would require repairs while being transported between their point of origin and the unloading elevators? A. No.

"4. Q. Was car P. R. R. 86,870 in good, sound condition, suitable for transportation of wheat, when it was set to the elevator at Kansas City, loaded with one of the shipments involved in this case for unloading? A. No.

"5. Q. Was car C. N. W. 141,928 in good, sound condition, suitable for transportation of wheat when it was set to the elevator at Kansas City, loaded with one of the shipments involved in this case for unloading? A. No.

"6. Q. After both of said cars were unloaded at Kansas City were they then found to be in good physical condition and suitable for the transportation of grain? A. No.

"7. Q. Did either of the cars involved in this case meet with any accident while being transported between points of origin and Kansas City which made it necessary to repair them?  A. No.

"8. Q. Were the doors on both of the cars involved in this case continually protected by seals from the time the wheat was loaded into them until unloaded at the elevators, except when samples were being taken by the bonded inspectors?  A. Yes.

"9. Q. Was there any wheat lost in transit from the cars involved in this case between the time they were loaded and the time of unloading?  A. Yes.

"10. Q. If you answer question No. 9 in the affirmative, state when and in what manner the wheat was lost from said cars.  A. Slow leakage or stolen in transit."

The defendant moved to set aside the answers of the jury to special questions Nos. 1, 2, 4, 5, 6, and 9, for the reason that each of them is contrary to the evidence.

It is argued with much force that the answers to questions Nos. 1 and 2 are contrary to the evidence; that the only evidence as to the condition of the cars at the time they were loaded showed they were in good condition, hence that the jury had nothing upon which to base its answers that they were not; that the answers to questions Nos. 4, 5 and 6 are against the only evidence offered as to the condition of the cars when they were unloaded at Kansas City, and that the answer to question No. 9 is contrary to the evidence of the several conductors and inspectors of defendant. There is no attack made by defendant directly upon the weight of the wheat loaded into the cars, nor upon the weight of the wheat unloaded from the cars. There was no effort made to show that the scales in any instance were wrong nor that there was any mistake or fraud or inaccuracy in the weighing.  These weights show a shortage between loading and unloading of 19,190 pounds.  That is a matter which stands out clearly in the evidence, without any direct attack being made upon it.  If the evidence as to the weights was true, and the seals of the cars not having been broken, the jury was forced to the conclusion that somewhere en route the wheat leaked or was stolen from these cars.  The jury had to decide between two conflicting views of the evidence, viz.: Were the weights as testified to correct? or Were the cars in good condition and did no grain leak from them?  The evidence concerning one of these conditions had to yield to that concerning the other; both could not be true.  It is the province of the jury to weigh the evidence and to determine which of two conflicting views of the evidence has been established.  It is clear from this situa-

tion, the jury concluded that the cars were, in fact, not in good condition, even though such inspection as was given the cars at the time they were loaded and such inspection as was given them en route and at the time they were unloaded, did not disclose the leakage.

We cannot say the conclusion reached was wrong, nor that the findings were not supported by evidence. The judgment is affirmed.