No. 25,931.

O. D. COLLIS, *Appellant*, v. CHRIS. J. KRAFT, *Appellee.*

SYLLABUS BY THE COURT.

1. APPEAL AND ERROR—*Failure to Verify Answer—Necessity of Objection.* Rule followed that an objection to an answer based on its want of verification, where verification is required by the code, must be clearly and precisely raised so that the court can understand it, otherwise no reversible error can be predicated on the trial court's ruling thereon.

2. BILLS AND NOTES — *Holder in Due Course — Purchase at Receiver's Sale.* The payee of a note obtained it from the maker by false and fraudulent misrepresentations and without substantial consideration. The payee indorsed the note before maturity to a bank as collateral to its own indebtedness. Later the payee became insolvent and a receiver sold all its assets, including this note, to plaintiff, and the proceeds of the receiver's sale were applied to the payment of the payee's indebtedness, and plaintiff and the bank joined in a motion that the court confirm the sale by the receiver, which motion was granted. *Held,* that the plaintiff's title and ownership of the note were no greater than that of the insolvent payee; he did not acquire the note by negotiation or assignment from the bank; and the same defenses were available to the maker against the plaintiff who purchased the note at the receiver's sale as would have been available against the payee.

Appeal from Douglas district court; HUGH MEANS, judge. Opinion filed May 9, 1925. Affirmed.

*C. C. Stewart,* of Lawrence, and *Charles B. Kaufmann,* of Davenport, Iowa, for the appellant.

*Arch M. McKeever, Keene Saxon,* both of Topeka, and *Edward T. Riling,* of Lawrence, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action on a promissory note. There was a good defense of want of consideration and fraud. The controlling question here is whether the plaintiff was a holder in due course.

The facts were these: An agent of the Pierson Manufacturing Company, a Topeka concern engaged in making gasoline engines and certain patented specialties, called on the defendant and induced him to purchase $2,000 worth of the company's stock. Very alluring representations touching the financial standing, business activities and outlook of the company were made to defendant, and it was on the strength of these statements, mostly false, that defendant purchased the stock and gave his note therefor. Sometime later defendant paid $500 on the note and executed a renewal thereof. The company indorsed the note and put it up as collateral to its own obligations in the Bank of Topeka. A receiver appointed for the company took charge of all its assets, and, pursuant to an order of court, sold them in five parcels to plaintiff for a lump sum of $101,000. One of these parcels consisted of certain personally mortgaged and hypothecated chattels and "all notes receivable by the corporation," including the note in controversy.

On the issues joined, the parties introduced their evidence, which included the matters involved in the receivership, the indorsement of this note at one time to the Bank of Topeka, and its sale by the receiver as an asset of the corporation to this plaintiff. The trial court held:

"That the plaintiff, having purchased said note from such receiver, is not entitled to the protection due to a holder in due course, but holds said note subject to the proven defense of fraud."

Plaintiff assigns various errors:

He first makes the point that defendant's answer was unverified. That point would have been good if he had squarely raised it in the trial court. (R. S. 60-729.) But instead of doing so, he first filed a reply traversing certain allegations of defendant's answer and pleading additional matters, and then filed a motion for judgment in general terms, leaving the trial court to guess what he meant, if in fact the point now pressed was what he was hinting at in the court below. It has been repeatedly held that nothing less than a precise and understandable objection to the sufficiency of a plead-

Collis v. Kraft.

ing, as, for example, the want of a verification to the answer, squarely raised in the trial court, will save the point for appellate review. (*Emery v. Bennett*, 97 Kan. 490, 155 Pac. 1075, and citations; *Livingston v. Lewis*, 109 Kan. 298, 198 Pac. 952, and citations; *Brown v. Oil Co.*, 114 Kan. 482, 483, 484, 218 Pac. 998.)

Can it be said that the indorsement of the note to the Bank of Topeka before maturity cut off the defense available against the original payee, the Pierson Manufacturing Company? If the bank, as holder of the note, had brought the action, or if the bank had transferred the note to a third party, and the latter was suing as holder, such defense would have been cut off. (*Underwood v. Fosha*, 95 Kan. 240, 245, 150 Pac. 571.) It is argued that the note was sold by the receiver not as a mere asset of the bankrupt payee, but also as an asset of the Bank of Topeka, because the bank had continued to hold the physical possession of the note until it received payment therefor. The bank did not receive payment for this note; it received payment of the indebtedness due to it, after which it had no further claim to the note, and did not pretend to have. The record is clear that the note, then long past due, was sold as an asset of the original payee. It was as the highest bidder of the Pierson company's assets, and not otherwise, that plaintiffs acquired title to the note. The sale was by a receiver, an officer of the court, and in sanctioning the sale of the note the court and its officer were not engaged in giving this note an immunity bath to free it from the defenses to which it was subject. The court and its receiver were selling, *in invitum*, what the bankrupt actually owned—nothing more—and that is all that plaintiff purchased. (*Reeves v. Pierce*, 64 Kan. 502, 67 Pac. 1108; *The State v. Bank*, 84 Kan. 366, 368, 369, 114 Pac. 381.) When the note returned to the original payee, or when the payee became entitled to its return and no third party had an interest therein, the fact that it had once been in the hands of an innocent holder lost its potency. (See Notes in 54 L. R. A., 673; 50 L. R. A., n. s., 78, 79; and *Shade v. Barnes Brothers et al.*, 35 S. D. 142, L. R. A. 1915 D, 271; 8 C. J. 470.)

Noting briefly other matters urged by appellant, the fact that several months after defendant had been defrauded he paid $500 on the original note, and gave the renewal note for $1,500 to take up the first, was immaterial. Defendant did not then know of the fraud nor of anything to put him on inquiry, nor was he under

any duty to investigate the status of the company. While it is true that the money paid by appellant for the assets of the company, including this note, went to pay the Bank of Topeka and other creditors, neither the Bank of Topeka nor any other creditor sold, transferred or assigned this note to plaintiff. After the claims of the bank and other creditors were satisfied, or contemporaneous with their satisfaction, the title and ownership to this note reverted to the original payee, and it was such title and ownership as was vested in the payee that the receiver professed to sell—nothing more. We note that in the receivership suit the Bank of Topeka and this appellant had moved that the sale of the bankrupt's assets by the receiver be confirmed, and appellant is therefore estopped to deny that he claims title through the receiver and to assert that he holds title through the Bank of Topeka.

The record contains no error and the judgment is affirmed.