No. 27,607.

## C. O. DIMMOCK, Doing Business as THE DIMMOCK MORTGAGE COMPANY, *Appellant*, v. WILLIAM C. PLOEGER, *Appellee*.

(264 Pac. 1044.)

SYLLABUS BY THE COURT.

1. APPEAL AND ERROR—*Necessity for Presentation in Court Below—Sufficiency of Verification to Answer.* In an action for a commission for securing a mortgage loan on defendant's farm, which loan was not used by defendant, and where the verdict and judgment were in favor of defendant, the record examined, and held that an objection to the sufficiency of the verification to defendant's answer not urged in the trial court presents nothing for consideration on appeal.

2. EVIDENCE—*Parol Evidence Varying Writing—Proof of Fraud or Alteration.* Exceptions to the rule as to the inadmissibility of parol evidence to impeach, alter or impair the terms of a written instrument are recognized where a defense is pleaded and supported by evidence tending to show that the instrument was signed by defendant because of misrepresentation and fraud or where the instrument had been altered without authority of defendant after being signed by him.

3. APPEAL AND ERROR—*Review—Conflict in Defendant's Testimony.* A conflict in defendant's own testimony is the concern of the jury and trial court, and their solution of such conflict is conclusive on appeal.

4. BROKERS—*Fraud in Procuring Contract—Evidence.* Objections to the jury's special findings on the ground that there was no competent evidence to support them considered and not sustained.

5. SAME—*Fraud in Procuring Contract—Corroboration of Defendant's Testimony.* Assuming that defendant's testimony required corroboration to uphold the verdict and judgment, the record examined and held to contain substantial testimony supporting the material matters testified to by him.

Appeal from Brown district court; C. W. RYAN, judge. Opinion filed March 10, 1928. Affirmed.

*F. M. Pearl*, of Hiawatha, for the appellant.

*W. E. Archer*, of Hiawatha, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: Plaintiff brought this action for a commission of $300 for alleged services in procuring a renewal of a $20,000 mortgage loan on defendant's farm in Brown county.

Defendant obtained the loan elsewhere and resisted payment of plaintiff's demand on the ground that he had not agreed to pay it.

Alteration of Instruments, 2 C. J. p. 1252 n. 36.  Appeal and Error, 3 C. J. p. 777 n. 15; 4 C. J. p. 849 n. 41; 2 R. C. L. 69.  Evidence, 22 C. J. pp. 1147 n. 82, 1215 n. 65; 10 R. C. L. 1052, 1058.

To maintain his action plaintiff relied, in part, on the contents of a written application for a loan signed by defendant. This instrument was entitled "Farm loan application," and recited that the Dimmock Mortgage Company, of Hiawatha, was appointed agent to procure a loan of $20,000 for the undersigned on his Brown county farm. The document then proceeded with some two pages of description of the security offered for the proposed loan, and *following* a recital of the farm acreage, its legal description and distance from town, and *preceding* particulars pertaining to its soil, water, lay of the land, improvements, and all the usual data which a money loaner would want to know before deciding to make the loan, these words inconspicuously appeared, "and for such service I agree to pay a commission of $—— (state whether cash, or commission mortgage)." When this application was exhibited in court the blank space for the agreed commission was filled in for the sum in dispute in this lawsuit, $300.

Defendant alleged that when he signed the application it was in blank form throughout, including the blank space for the insertion of a sum as commission.

The cause was tried before a jury, which returned a general verdict for defendant, and answered several special questions, one of which reads:

"Q. Did the plaintiff write in the alleged farm loan application $300 as the amount of commission without the knowledge or consent of the defendant? A. We believe he did."

Judgment was entered for defendant, and plaintiff assigns various errors, which will be noted as argued.

The first point presented relates to a suggested insufficiency in the verification of defendant's answer, but as that matter does not appear to have been raised in the court below it cannot now be considered. (*Collis v. Kraft,* 118 Kan. 531, 235 Pac. 862.)

The next error urged concerns the instructions given and refused. Plaintiff's theory of the case was that he was entitled to an instructed verdict in his behalf. That notion was based on the familiar rule of law that parol evidence is not admissible to impeach, alter or impair the plain text of a written instrument. There is, however, an exception to that rule as familiar as the rule itself, which is that parol evidence is admissible to show that the instrument by fraud or mutual mistake does not correctly recite the agreement of the parties (*Logan v. Collinson,* 114 Kan. 620, 220 Pac. 291), or that the instru-

Dimmock v. Ploeger.

ment has been altered since it was signed. (*National Bank v. Hoover*, 114 Kan. 394, 400, 401, 218 Pac. 1003; *Holloway v. Gano*, 120 Kan. 256, 243 Pac. 317.)

It was defendant's contention, and his evidence was to the same effect, that he signed the application in blank at plaintiff's behest upon the understanding that plaintiff would send it to the loan company to find out if it was disposed to renew the loan. On that view of the case, plaintiff invokes the rule of law that where a person signs an instrument partly in blank, depending on another to fill out the missing matter, the signer is bound by what he has trusted the other, his agent, to insert. This is good law, of course (2 C. J. 1252); but just how would that rule affect defendant's obligation as applied to this written application for a loan? It was intended to be addressed to the Provident Mutual Life Insurance Company of Philadelphia, which was the holder of the maturing mortgage on defendant's farm. Whatever facts or representations were inserted in the application for a renewal of that loan, whether inserted by plaintiff after defendant signed it in blank or not—and no matter when inserted nor by whom—if the Provident Mutual Life Insurance Company had acted on those facts and representations in good faith, and to the extent that it acted in reliance on them, defendant would have been bound. That was the legal effect of defendant's signing the application in blank. It had no other effect. The recital of an obligation to pay $300 to plaintiff obscurely incorporated in the midst of information about defendant's farm was another and quite an independent matter of no concern to the Philadelphia mortgagee. No rule of law estopped the defendant to plead and prove by any competent evidence, oral testimony included, that he did not agree to pay any sum as commission, nor was he estopped to plead and prove, if he could, that the figures $300 were inserted in the instrument after it was signed, and done, too, without his consent. The trial court's instructions fairly stated the issues, and no error appears in those given or refused.

Emphasis is placed on part of defendant's testimony where he apparently misspoke himself. This testimony reads:

"*Direct Examination:*

"Q. At the time you signed this paper—I call your attention to the fact that it has in it $300, 'I agree to pay, as commission, $300.' Do you see that in this paper or did he call your attention to it? Did you see it? A. Yes, sir."

Later, however, he testified:

"Q. When you signed this paper, Mr. Ploeger, did you see anything written in about $300 commission? A. No, sir. . . .

"Q. Do you know how $300 came to be written above your signature in exhibit No. 2? . . . A. No, sir.

"Q. Did you ever tell anybody, Mr. Dimmock or anybody else, to write $300 in this paper above your signature? A. No, sir. . . .

"*Cross-examination:*

. . . . . . . . . . . . . . .

"Q. You knew that Mr. Dimmock was the officer, agent or representative for that company? A. Yes, sir.

"Q. And the loan that you were seeking to renew is the $20,000 loan of the Provident Life and Trust Company, that matured March 1, 1925? . . . A. To renew or pay off one. . . .

"Q. He didn't tell you there was nothing in this paper about commission of $300, did he? A. No, sir. . . .

"The Court: Was there anything said about the commission?

"The Witness: He—why I asked what the commission would be and he would not say."

This "Yes, sir," and "No, sir," testimony regarding the evidence or nonexistence of the figure $300 and on the question whether the parties had agreed on a $300 commission at the time defendant signed the application was doubtless a good talking point in plaintiff's behalf before the jury. But when that use of it brought no results it is a waste of printer's ink to bring it before this court of review. (*Harris & Haynes v. Railroad Co.*, 117 Kan. 468, 232 Pac. 264.)

Error is assigned on the court's refusal to set aside the jury's answers to special questions on the ground that they were not supported by competent evidence. That argument is based on the assumption that the defendant's signature to the application was not procured through any misrepresentation, and that plaintiff had enforceable rights under the application addressed to the Philadelphia mortgagee. Not only was that assumption ill founded, but in the consideration of this appeal the legal question keeps intruding, How could plaintiff claim compensation for services as agent of defendant when his own counsel, in cross-examining defendant, developed the fact that plaintiff was the agent of the other party to whom the application was made? The record reads:

"Q. You know that Mr. Dimmock was the officer, agent or representative for that company? A. Yes, sir.

"Q. And the loan that you were seeking to renew is the $20,000 loan of

Dimmock v. Ploeger.

the Provident Life and Trust Company, that matured March 1, 1925? . . .
A. To renew or pay off one. . . .

"Q. He didn't tell you there was nothing in this paper about commission
of $300, did he?  A. No, sir."

However, this point is not urged, and indeed it is not needed to
uphold the judgment, but it is not without significance on the gen-
eral question whether justice has miscarried in this case.

Plaintiff's final point is that defendant was unsupported in his
testimony, while certain witnesses for plaintiff, his employees, testi-
fied in corroboration of plaintiff to the effect that the application
was deliberately filled out by plaintiff in response to defendant's
answer to the many matters of fact included in the instrument.
These witnesses did not say they heard the parties agree on a $300
commission.  They testified they heard plaintiff say if defendant
would bring in his wife and sign the papers for the renewal of the
loan he would reduce his commission to $10 per thousand.  The
weight of the evidence and the significance of any want of corrobo-
ration was the concern of the jury, not ours; but it is hardly ac-
curate to say there was no corroboration on the material parts of
defendant's evidence.  Defendant's wife's testimony, his brother's,
the literal arrangement of the text of the application itself—and in-
deed part of plaintiff's own testimony—tended to corroborate de-
fendant's evidence in some respects.  Plaintiff's testimony not only
tended to substantiate defendant's evidence that the application was
signed in blank to be filled in afterwards, but discredited the testi-
mony of plaintiff's witnesses to the contrary.  Under a searching
cross-examination plaintiff had to admit that he filled in the blanks
in the application, or part of them, from data he had in his office
concerning the former loan on the property made five years pre-
viously.  The record reads:

"Q.   . . . You didn't ask him at that time about the number of acres
of land, did you?  A. I think I did.

"Q. You wouldn't say absolutely or positively that you did?  A. *I filled
in the description from the former loan.*"

A painstaking review of this record discloses no error of sufficient
gravity to permit the judgment to be disturbed.  It is affirmed.