W. L. JOYCE, *Appellee,* v. THE MIAMI COUNTY NATIONAL BANK, *Appellant.*

No. 18,348.

SYLLABUS BY THE COURT.

1. COLLECTION AGENT—*Contingent Fee—Fee Recovered Not Unreasonable.* A bank delivered notes which had long been charged to profit and loss to an attorney under an agreement that if they could be collected or secured the bank would pay him a "lively fee," since whatever the bank received would be clear gain. The attorney expended time, labor, skill and judgment in a diligent effort to realize on the notes, and then in an effort to secure judgment on them with-

out publicity and with little expense. After securing judgment by default he discussed with the bank on different occasions the best course to pursue and prompted the issuance of an execution. After that the bank ceased to consult him, kept the judgment alive itself, and eleven years after the date of rendition compromised it and satisfied it of record. *Held*, the attorney was entitled to compensation for his services, and that a verdict, supported by substantial testimony, for fifty per cent of the proceeds of the collection is not unconscionable.

2. ATTORNEY—*Compensation Contingent on Collection—Statute of Limitations.* The right of the attorney to compensation being contingent on collection, no cause of action arose in his favor until the collection was made and the statute of limitations did not begin to run against his claim for fees until that time.

Appeal from Bourbon district court; JOHN C. CANNON, judge. Opinion filed November 8, 1913. Affirmed.

*A. M. Keene, E. C. Gates,* both of Fort Scott, *E. J. Sheldon,* and *S. J. Shively,* both of Paola, for the appellant.

*J. I. Sheppard, James G. Sheppard, Kate Sheppard,* all of Fort Scott, *B. T. Riley,* and *W. L. Joyce,* both of Paola, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The plaintiff sued to recover attorney's fees for professional services rendered the defendant. Judgment was entered in his favor and the defendant appeals.

The employment originated with the following letter from the defendant to the plaintiff, dated June 26, 1893:

"Inclosed I send you three notes given by Hanways to this Bank. Please don't mention to anyone in Franklin Co., Kansas, what we are trying to do in Texas. Don't mention to Texas what we are trying to do in Kansas, not now at least. These notes were charged to

P & Loss long ago, and if they can be secured or collected we are ready to pay a *lively* fee. What the Bank gets is clear gain."

The notes referred to were executed by B. Hanway, who resided in Cowley county, J. S. Hanway, who resided in Franklin county, and S. B. Hanway, who resided in Texas. The plaintiff and the defendant were residents of Miami county.

On January 20, 1894, the defendant wrote the plaintiff as follows:

"If we can do anything to avoid *publication* in the Hanway case do so.

"The less cost is made and less publicity the more we would pay you for the work. But get confession if possible, that cuts off a fight.

"We make it a point to pay for *not getting into court.*"

On April 3, 1894, judgment was taken on the notes in the district court of Franklin county against B. Hanway and J. S. Hanway for the sum of $1535.10, with interest at the rate of ten per cent per annum. On January 29, 1905, the defendant accepted the sum of $1650 in satisfaction of the judgment, which then amounted to $3197. The plaintiff learned of the satisfaction of the judgment in February, 1906, and commenced his action on January 18, 1908. The jury awarded him $878.62, or fifty per cent of the amount collected, with interest.

The defendant took the position at the trial that placing the notes in judgment was a matter separate and apart from the employment to collect or secure the claim, and starting from this premise deduces several important conclusions in its brief. This interpretation of the relations of the parties is precluded by the testimony of the defendant's cashier:

"Q. 253. In other words whatever compensation Mr. Joyce got was to be paid out of the amount collected? A. The ratio would be out of that, yes, sir.

"Q. 254. If Joyce did n't collect anything the Bank

did n't owe him anything? A. The Bank did n't owe him anything except for work that he might have done, then when he put them into judgment that was a separate arrangement entirely; that was done no doubt at our advice, and then we ordered it put into judgment.

"Q. 255. Did you make any different arrangement with Mr. Joyce with reference to reducing these notes to judgment? A. Why, no certainly not.

"Q. 256. With reference to the collection of the Hanway notes how many agreements did you have with Mr. Joyce? A. Only one agreement.

"Q. 257. That was when it was first placed in his hands? A. Yes, sir.

"Q. 258. You had no separate arrangement with Joyce after that about reducing it to Judgment? A. Not that I know anything about."

The evidence was that putting the notes in judgment represented only a portion of the plaintiff's work. He carefully investigated the financial responsibility of the debtors both in Kansas and in Texas, at the expense of considerable time and labor. Some difficulty was experienced in determining whether or not B. Hanway had property subject to appropriation, which required the plaintiff to go to Franklin county. He personally secured from B. Hanway a power of attorney to an attorney at law to enter appearance and confess judgment, and the judgment was obtained by default.

On December 2, 1894, the plaintiff rendered to the defendant an account of the court costs and of his personal expenses in the Hanway and some other matters, which the defendant paid. In the letter transmitting the accounts the plaintiff said:

"I don't think there should be much charges in actions where no money is realized. The Hanway judgment is for $1535.10, dated April 3, 1894, interest at 10 per cent from rendition."

After the judgment was taken the plaintiff conferred several times with the defendant respecting the best course to pursue, the advisability of issuing execution, and the advisability of bringing suit in Texas. In 1897

the plaintiff suggested to the defendant that it was about time execution should be issued on the judgment, and was told that another attorney, who was looking after some business for the defendant and who then had its profit and loss book, would issue an execution. An execution was issued immediately after this conversation. All the plaintiff's conversations and correspondence were with J. W. Sponable, who was the defendant's president. Sponable died in 1899. His son became president of the bank and the plaintiff was no longer consulted in reference to its business. Some executions subsequent to the first were issued without the plaintiff's intervention.

Without undertaking to prescribe a measure of conduct applicable generally to cases of this character, the court is of the opinion that the plaintiff was entitled to compensation for his services. The debt belonged to a well-known class, and the plaintiff gave it the time, effort, skill and judgment which such debts demand and which business men expect. Other expedients being of no avail the legal obligation was not only preserved but its character was improved by raising it from simple contract to judgment. By this means the debt was rendered vastly more secure even if it were not secured in the sense of Sponable's letter. Nothing then remained to be done to effect collection except to keep the judgment alive until property came into the hands of the judgment debtors which the judgment would threaten, and the plaintiff did protect it against dormancy until the defendant severed business relations with him. Of course it made no difference whether the money were paid directly to him or to the defendant.

The amount of the plaintiff's compensation was determined by the jury from the proof. The debt was apparently hopelessly bad. Whatever the bank realized was clear gain. If nothing were realized the plaintiff lost all his work. Under these circumstances the court

is not prepared to say that an equal division of the proceeds is unconscionable.

The action was based on contract. Nothing was due the plaintiff until collection was made. No cause of action accrued until that time and consequently recovery was not barred by the statute of limitations.

The foregoing disposes of the merits of the controversy and the principal contentions of the defendant. The plaintiff was a competent witness in his own behalf. He was probably entitled to give his interpretation of the ambiguous expression "a lively fee," but in any event it is not likely, in view of all the evidence in the case, that the verdict was rested on his statement that he was entitled to a certain sum. Evidence of fees paid the plaintiff by the defendant in other bad-debt cases threw light on what the parties understood by "a lively fee." A special finding of the jury that the plaintiff did secure the Hanway notes "by judgment" does not indicate passion or prejudice. According to the abstract the defendant is mistaken in its brief in regard to the character of special finding No. 7.

The judgment of the district court is affirmed.

BURCH, J. (dissenting) : I regard the judgment as excessive and think it should be reduced to $500.

Mr. Justice BENSON concurs in this dissent.