No. 22,216.

W. M. SEDBROOK and GEORGE B. SEDBROOK, *Appellants,* v. B. M. McCUE et al., *Appellees.*

SYLLABUS BY THE COURT.

1. ACTION TO SET ASIDE CONVEYANCES—*Fraud Alleged—Evidence Insufficient to Prove Fraud.* In an action to set aside a number of conveyances of real estate on the ground that they were fraudulent and made for the purpose of secreting the property and preventing the appropriation of the same to the payment of the real owner's indebtedness, it is held that the testimony was insufficient to prove the charges of fraud.

2. SAME—*Money Advanced to Defeat Action—Not Contrary to Public Policy.* The furnishing of money to enable a debtor to conduct a litigation intended to defeat the recovery of an unenforceable mortgage against the debtor, where those furnishing the money for the litigation were sureties upon a valid indebtedness of his, and which they would have been compelled to pay if the invalid mortgage was enforced, is not deemed to be contrary to public policy.

3. SAME—*Attorneys—Contingent Fees—Validity of Contract.* A contract between a client and attorneys to the effect that they would carry on the litigation mentioned and receive as their compensation one-half of the properties and moneys that might be saved by their efforts, the client to pay the costs, was not illegal or against public policy.

Appeal from Finney district court; GEORGE J. DOWNER, judge. Opinion filed May 10, 1919. Affirmed.

*H. O. Trinkle,* of Garden City, for the appellants.

*F. Dumont Smith,* of Hutchinson, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: This is a proceeding in the nature of a creditor's bill. On May 20, 1913, A. L. Sedbrook recovered a judgment against B. M. McCue for $5,367.50, which was subsequently assigned to the plaintiffs, who are his sons. They allege that McCue is the real owner of a number of tracts of land, the title of which is held in the names of Mary McCue, his wife, A. H. Warner, W. M. Kinnison, C. B. Oldfield, Wesley A. Taylor, and Elbert McCue, who are named as defendants. It is averred that the defendants conspired with McCue, the judgment debtor, to secrete his property and thereby defraud and defeat his creditors. In her answer Mrs. McCue set out her interest in the land, alleging that she had acquired a body of land in Nebraska prior to her marriage, and with her own money had purchased an additional tract in that state, after her marriage, and that for convenience the title to her lands was placed in her husband; that thereafter she exchanged her Nebraska lands for a two-thirds interest in seventy quarter sections of lands in the counties of Stevens and Haskell in Kansas, and for convenience the title to these lands was allowed to stand in her husband, who owned the other one-third interest in the same lands; and that a sale of part of these tracts was made, and the money received therefor invested in other lands. During these transactions it is alleged that B. M. McCue was solvent and a man of large means, and that the title to Mrs. McCue's land was allowed to remain for a time in his name as a matter of convenience, without any intent to mislead or defraud any one. She further stated that long prior to the rendition of plaintiff's judgment, McCue conveyed to her the lands mentioned, partly for the purpose of putting the record title of her lands in her own name, and partly for the purpose of paying her a large sum of money for which he was indebted to her by reason of the real-estate transactions; that this was done before the rendition of the judgment held by the plaintiffs; and that their judgment never became a lien upon these lands. The plaintiffs replied, denying that Mrs. McCue had any interest in the lands the title of which stood in the name of

her husband, and they averred that she permitted the title to remain in his name to strengthen his credit, and that A. L. Sedbrook relied on the record titles and the representations made by McCue when the debt for which the judgment was rendered was contracted.

The defendant Warner answered that McCue became indebted to the New England National Bank, and also the Garden City National Bank, of which W. M. Kinnison and himself were the president and cashier respectively, and that they had become sureties for McCue on that $30,000 of indebtedness. He further alleged that McCue had become financially embarrassed and involved in litigation with the Commercial Trust Company over a mortgage given by him and his wife upon all the lands described in plaintiffs' petition, and also other lands, and that McCue entered into a contract with him and Kinnison by which the lands were transferred to them, in consideration of which they were to advance money to pay the expenses of the litigation, and also for the purpose of paying underlying liens, thus saving a part of the land, and at the same time protecting the obligation which they had assumed as sureties for McCue. He further alleged that advances had been made under the agreement for expenses and the payment of liens, aggregating about $60,000, which was a valid lien upon the lands transferred to them by a deed, which was in effect a mortgage, and was superior to plaintiff's judgment lien. It was also alleged that the lands had been conveyed by Kinnison to the defendant Warner, and that he holds the same under the terms and conditions of the contract for himself and Kinnison.

In the trial it was shown that a contract had been made with F. Dumont Smith and Albert Hoskinson, attorneys at law, by which they were to conduct the litigation between McCue and the Commonwealth Trust Company, which Kinnison and Warner had agreed to finance, under which the attorneys were paid a retainer and an amount of money for expenses of the litigation, and as further compensation it was agreed that they should receive one-half of all the moneys or properties that might be saved by their efforts through litigation, compromises, or otherwise. The trial court held that plaintiffs had failed to establish their claims of fraud and gave judgment for the defendants. The plaintiffs insist that the land transactions between McCue and his wife were not made in good

faith; that she was not in fact the owner of the lands; and that he was not indebted to her; and further, that the transfer of the lands to her was designed to defraud creditors. These transactions mainly occurred before the judgment assigned to plaintiffs was rendered. No evidence was introduced to discredit the claim of ownership of the Nebraska lands by Mrs. McCue, nor that she was the owner of the Kansas lands received in exchange for her property in Nebraska. That McCue was indebted to his wife on account of land transactions, was shown beyond question. At the time of these transactions McCue was solvent and a man of considerable wealth. In the construction of a railroad he became financially involved, and the litigation growing out of the railroad construction and the appropriation of a part of the lands in question to the carrying on of that litigation, in order to save a part of the lands, has given rise to much contention between the parties herein.

The litigation with the Commonwealth Trust Company not only involved large interests, but was of a complicated and difficult character, and this appears from a branch of the litigation which reached this court. (*Lynn v. McCue,* 94 Kan. 761, 147 Pac. 808.) In a later trial the mortgage of the trust company was canceled, and no appeal was taken from the judgment. To carry out the provisions of the judgment, Charles G. Cobb, to whom the trust company had transferred its interests, executed a deed to Kinnison and thereby released the mortgage and removed that cloud from the title to the lands.

Plaintiffs contend that the contract with the attorneys is contrary to public policy and void. It is not claimed that it is champertous, and the charge of invalidity is not specific. A large contingent fee was agreed upon, but—

"It is not illegal nor against public policy for a lawyer to prosecute an action for a client who is unable to pay for his services; nor, in such a case, is it illegal or against public policy for the lawyer to contract with the client for compensation for his services out of the amount recovered, and contingent upon recovery." (*Stevens v. Sheriff,* 76 Kan. 124, 90 Pac. 799.)

Neither can the contingent share agreed to be paid be regarded as unconscionable or inequitable. McCue was insolvent and without means to prosecute the action. The litigation necessarily involved much time, and skill, and work, as well as

much uncertainty as to the result. It required the bringing of suits in a number of counties, and in more than one state. It is stated that the attorneys had sixteen suits relating to the subject matter pending in different counties of Kansas, and two in the state of Missouri, and that the litigation ran through a period of three years. Although the contingent fee was large, it cannot be regarded as excessive when con- sidered in connection with the services rendered and the haz- ards of such doubtful litigation. Besides, no complaint is made by the clients of unfairness in the terms of the contract, excessiveness in the share paid or to be paid, or as to the value of the services rendered. The argument of plaintiffs implies that the contract is void because the attorneys were employed to defeat creditors, and the same charge is made as against the agreement by Kinnison and Warner to furnish the means to aid in carrying on the litigation. There is nothing substantial in this contention, as the enforceability of the mortgage of the trust company was a matter of substantial dispute, and the judgment rendered at the end of the litiga- tion canceling the mortgage leaves no room to question the good faith and legality of the resistance that was made to the enforcement of the mortgage. In furnishing money to help conduct the litigation, Kinnison and Warner had not only the strength and justice of the defense against the mortgage as an inducement, but having become sureties on a large amount of the McCue indebtedness, and there being no resources of McCue to look to except the land, good grounds existed for the protection of themselves against their suretyship liability by aiding in the defeat of the $400,000 encumbrance claimed by the trust company. No principle of public policy was vio- lated by the part which they took in helping to defeat the un- enforceable lien and thereby saving themselves and a part of the encumbered lands. To secure this protection, judgments were paid, liens discharged, sales and exchanges made, and while there is criticism of these transactions, nothing was developed to show that they were inconsistent with an honest endeavor to carry out the purposes of the parties as expressed in their contracts. A great number of these transactions are referred to by the plaintiffs as subject to suspicion, but there

52—104 KAN.

is no substantial proof to show that they were dishonest or made for the fraudulent purpose of concealing McCue's property from his creditors.

The appeal involves little, but the sufficiency of the evidence to prove the alleged fraud. The testimony is too voluminous to warrant its reproduction here, but a careful examination of it satisfies us that there was no error in the holding of the trial court, nor in the judgment that was rendered.

Affirmed.