No. 33,333

FRED G. COOK and CORA E. COOK, *Appellants*, v. CHANCE L. DONNER and BESSIE DONNER, *Appellees*.

(66 P. 2d 587)

Opinion filed April 10, 1937.

W. R. Glass, Innis D. Harris, Jr., and W. J. Glass, all of Wichita, for the appellants.

Rupert Teall, of Wichita, for the appellees.

W. L. Cunningham, D. Arthur Walker, Fred G. Leach and Wm. E. Cunningham, all of Arkansas City, as amici curiae.

The opinion of the court was delivered by

HUTCHISON, J.: This was an action to recover on a promissory note and to foreclose a mortgage on real estate securing the note, where judgment was rendered for the defendants after the introduction of the evidence. Plaintiffs filed a motion for a new trial, and after it was overruled they appealed to this court.

There are two questions involved in the appeal. The first is concerning the pleadings. The petition was in the usual form of one for the recovery upon a note and the foreclosure of a mortgage given to secure the payment of the note. An unverified answer was filed by the defendants consisting of a general denial, a special denial and a cross petition. The execution of the note and mortgage was more than once admitted in the defendants' pleadings. A reply in the form of a general denial was filed by the plaintiffs on July 1, 1936. The plaintiffs, on August 27, 1936, when the case was called for trial, filed a motion for judgment for the plaintiffs on the pleadings because the answer was not verified as required by G. S. 1935, 60-729, when the action was founded on written instruments for the unconditional payment of money. This motion was overruled and the court proceeded with the hearing of the testimony. The court found that the note and mortgage upon which the action was brought were null and void and that plaintiffs should not recover on their petition, and that the defendants should not recover a judgment for money on their cross petition.

Appellants claim that no issue was before the trial court and the defendants were in default when their answer was not verified, citing Lukomske v. Harris, 143 Kan. 916, 57 P. 2d 20; Hamson v. Babbitt, 123 Kan. 32, 254 Pac. 332; Rose v. Boyer, 92 Kan. 892, 141 Pac. 1006; and Collis v. Kraft, 118 Kan. 531, 235 Pac. 862, in support of their position and insisting that the trial court committed error in overruling their motion for judgment, which definitely called attention to the want of verification of the answer. There can be no contention but that this action is founded on written instruments

for the unconditional payment of money. In the first case above cited it was held that where the mortgage specifically prescribed that the taxes on the mortgaged real estate shall be paid by the mortgagor, it came under the provision of the above-cited statute as a written instrument for the unconditional payment of money, and an unverified answer constituted no defense to the action.

The defendants contend that the plaintiffs waived the right to urge that the answer was ineffectual by filing a reply thereto nearly two months before filing such motion on the day the trial commenced and that the reply recognized the answer as a sufficient pleading to be met and its allegations denied. The Collis case, although holding that the unverified answer in such cases is not a sufficient pleading, yet recognizes the matter of pleading over by filing a reply and later filing a motion raising the question of lack of verification of the answer. The motion in that case, however, was not clear. The motion in the case at bar was specific and left no doubt as to its purpose. The Hamson case, in addition to holding that the unverified answer raised no issue against a verified account, held that the motion for judgment was not clear, but the attorney for defendant presented the defense in an opening statement to the jury and after the close of the plaintiff's testimony the defendant was sworn and testified, and it was held that all the purposes of the verified answer had been subserved. In the case at bar both defendants were sworn and testified in support of the allegations and denials of their answer and cross petition. If the trial court had sustained the motion for judgment, doubtless the defendants would have asked leave to verify at that late date and leave would undoubtedly have been granted.

In 49 C. J. 841 it is said:

"Pleading over or going to trial without objection, or both, waives the right to urge that a pleading was not subscribed, or verified, or that the verification was defective."

In *State, ex rel., v. Strevey*, 138 Kan. 646, 27 P. 2d 253, which was a bastardy case, a distinction was made in such matters between civil and criminal cases, and it was there said:

"In a civil case where verification of a pleading is required to raise an issue, the want of such verification is waived if the adversary pleads over without first directing the court's attention to its technical insufficiency." (p. 648.)

In the case of *Emery v. Bennett*, 97 Kan. 490, 155 Pac. 1075, it was held:

"Although section 110 of the civil code requires that the answer to a petition in an action founded on a written instrument for the unconditional payment of money shall be verified, the verification is waived when the plaintiff joins issue on the answer, introduces evidence contradicting such defense, and asks instructions covering his theory of the law pertaining thereto." (Syl. ¶ 1.)

Not all these things were done in the case at bar, but the reply was filed before the motion was made, and thereafter both defendants were sworn and testified.

In the case of *Livingston v. Lewis*, 109 Kan. 298, 198 Pac. 952, there was an allegation of partnership followed by an unverified answer, and it was held that the existence of the partnership thereby stood admitted, but it was further held that the plaintiff can only take advantage of this rule by a timely objection, and if he replies to the unverified answer and goes to trial on the issues of fact and adduces his evidence thereon without making a showing of being surprised and being unprepared to meet such issue, it would not be error for the trial court to try out and determine the issue of partnership. Of course, there is a difference between this case and the one at bar in that in the latter the plaintiffs did call to the court's attention the lack of verification.

In the case of *Hill v. Republic County*, 99 Kan. 49, 160 Pac. 987, it was held in an action on an account duly verified, which must be taken as true unless denied under oath, that "the failure to deny the account under oath admits only its accuracy and not its legality."

Appellants cite *Hoxie State Bank v. Vaughn*, 137 Kan. 648, 21 P. 2d 356, which holds that the trial court had wide discretion in permitting filing and withdrawal of pleadings and other papers not only before and during the trial but even after the trial, and urges that the trial court could have permitted the withdrawal of the reply and granted leave to file the motion. This is certainly correct, and the court could have permitted the defendants to have verified their answer, which would have entirely disposed of this first question on this appeal.

Under these several authorities and the fact that both the defendants were later sworn and testified in line with the allegations of their answer and cross petition, we must hold that the rights of the parties were not materially affected or prejudiced by the overruling of the motion filed after the reply.

The second question involved in this appeal is the validity of the note and mortgage upon which the plaintiffs' cause of action is based. The trial court held them to be null and void. Attached

to the defendants' answer as an exhibit was a copy of a document signed by one of the plaintiffs and addressed to the Home Owners' Loan Corporation, denominated "Mortgagee's Consent to Take Bonds." The pleadings and evidence show that the defendant had purchased this lot from plaintiffs, and still owed them for a part of the purchase price, in addition to a mortgage that had previously been given on the property to a building and loan association; that an effort was made to get a loan from the Home Owners' Loan Corporation, and in that connection a release was required by that corporation from the plaintiffs upon its usual form. Contained in such release, signed by the plaintiff wife, who conducted the business for her husband and herself, is the following paragraph:

"Being informed that said owner has made application to Home Owners' Loan Corporation to refund his said indebtedness, the undersigned has considered the method of refunding mortgages provided in Home Owners' Loan Act of 1933, as amended and passed by Congress and approved by the President, and the undersigned hereby consents, if said refunding can be consummated, to accept in full settlement of the claim of the undersigned the sum of $375 face value of the bonds of Home Owners' Loan Corporation, to be adjusted with not exceeding $25 cash and thereupon to release all the claim of the undersigned against said property."

This $375 mentioned in the release did not cover all the claim of the plaintiffs against the defendants by $1,700, and the answer states that previous to receiving said bonds in payment of their mortgage the plaintiffs required of the defendants that they execute to plaintiffs a note and second mortgage covering the difference of $1,700, and that they did execute such note and second mortgage secretly, without the knowledge of the Home Owners' Loan Corporation, because of duress and being in fear of said plaintiffs and contrary to the terms, conditions and understanding of the Home Owners' Loan Corporation. An exhibit in the form of a letter written quite a little later was introduced in evidence showing the requirement of the Home Owners' Loan Corporation to reduce this note and mortgage from $1,700 to $605.95. The evidence of the plaintiffs and defendants differs as to the representatives of the Home Owners' Loan Corporation being acquainted with the plan of the plaintiffs taking a note secured by a second mortgage for the balance of their claim. Plaintiffs say they talked with the officers at the time they signed the release and told them this was their plan.

The legal question is raised as to the competency of such testimony to vary and alter the terms of the written release contract.

One officer of the Home Owners' Loan Corporation was called as a witness by the defendants, and he testified only as to having dealt with Mrs. Cook, one of the plaintiffs, and not with Mr. Cook, as she told him Mr. Cook had been seriously injured in an accident and was not able to transact business at that time, and he further testified that he had transacted considerable business with Mrs. Cook ten or twelve times on different loans. Mr. Cook testified he did not know the release provision was in the contract his wife was signing, but he knew she was signing the papers to get the loan, and that she was carrying on and transacting most of the business.

The written document here involved, being a release, may not come under the general rule as to evidence of prior or concurrent parol agreements contradicting or altering its terms being inadmissible, but such evidence shows a violation of the rules of the corporation which were authorized and approved by the act of congress (Home Owners' Loan Act, 1933, 12 U. S. C. A. § 1461, *et seq.*, 48 Stat. 128) permitting such loans to be made. Title 12 of that act, section 1463 (k), authorized the Home Owners' Loan Corporation to make and put in operation in carrying out its loan business under such act all necessary rules. Among such rules so made, published and put in operation is chapter VI, section 4-d (1) of the Manual of Rules and Regulations, which is as follows:

"The corporation will not refund any indebtedness where the mortgagor is required to pay more than he owes, through agreements either to pay future interest to the original mortgagee, or to absorb any loss of interest by the original mortgagee, or to guarantee any difference between the face value of the bonds plus accumulated interest thereon and the market value of the same, or to cover any assumed loss on account of acceptance of the bonds of the corporation by the mortgagee. The corporation will not become a party to any contract between a mortgagor and a mortgagee in reference to indebtedness refunded by the corporation."

Of course, courts must take notice of statutory provisions, and that includes the rules of the Home Owners' Loan Corporation authorized by the act. (*Jessewich v. Abbene*, 277 N. Y. S. 599.) The second paragraph of the syllabus of the case just cited, which was decided February 19, 1935, is as follows:

"Where mortgagees received from Home Owners' Loan Corporation the corporation's bonds and small cash payment in exchange for and in full satisfaction of their second mortgage and relinquished $700 balance due thereon, secret collateral agreement between property owners and such mortgagees whereby owners acknowledged $700 indebtedness and agreed to give second mortgage if they could not pay cash held void. (Home Owners' Loan Act of 1933, as amended [12 U. S. C. A., § 1461 *et seq.*])"

Appellants contend in the case at bar there was no secret collateral agreement, but the matter of secrecy of the agreement is not very important, as the very next rule to the one above quoted makes an exception to the rule so that in some special cases named the corporation may allow such second mortgage, but nothing of that kind is applicable in this case, although some of the testimony of the plaintiffs attempted to show it.

A more recent case along the same line is *First Citizens Bank & Trust Co. v. Speaker*, 287 N. Y. S. 831, decided May 12, 1936, in which the holding was as follows:

"Where mortgagee, in connection with procurement of loan from Home Owners' Loan Corporation, discharged its second and third mortgages for $2,500 as paid, delivered notes secured by such mortgages to Home Owners' Loan Corporation, and received from owners $830 note secured by second mortgage, secret note executed by owners to mortgagee for balance of indebtedness held invalid as violative of Home Owners' Loan Act [Home Owners' Loan Act of 1933, § 8 (a), 12 U. S. C. A., § 1467 (a)]."

A case along the same line, but growing out of the making of a loan by the Federal Farm Mortgage Corporation, is *Federal Land Bank of St. Paul v. Rudolph Kislofsky et al.* (N. D.), 271 N. W. 907. In it the Farm Mortgage Corporation made a loan on a farm in North Dakota and took a release from a bank which had been the mortgagee, and the bank accepted the bonds, but by an agreement with the farmer took a mortgage from the farmer on all his chattels for the unpaid part of the loan. There was absolutely no disagreement between the bank and the farmer, but when the latter was unable to meet the requirements of the chattel mortgage and was about to lose his livestock and farm implements and be unable to continue the proper care of the farm, the Farm Mortgage Corporation and the Federal Land Bank were upheld in maintaining an action against the bank to cancel the chattel mortgage.

In the case of *Stager v. Junker*, 14 N. J. Misc. Rep. 913, 188 Atl. 440, decided by the supreme court of New Jersey, December 14, 1936, it was held that the mortgagee, after having agreed with the Home Owners' Loan Corporation to release the indebtedness of the mortgagor, could not defeat the terms of the agreement by exacting a secret agreement with the mortgagor to pay losses sustained in making the release, and in the opinion emphasis is placed upon the intention of the act and the rule made thereunder, stating that—

". . . the rules of the corporation provide that no loan will be made where there was a separate understanding or agreement between the debtor

and the holder of the mortgage calling for any payments other than those required by the corporation." (p. 914.)

It will be observed that some of the decisions use the term "secret," as applied to the agreement to pay the loss sustained by the mortgagee, and the appellants in the case at bar insist upon the agreement in this case having been made known to the agent of the Home Owners' Loan Corporation at the time of signing the release. In this connection our attention is called to the fact that rule d(1), ch. VI, § 4, above quoted, in describing such agreements, does not use the term "secret" or any like term. So such agreements would seem to be prohibited whether they be secret or not.

It was further said in the Stager case, above cited, in effect that the mortgagee was precluded from exacting any further or other agreement from his debtor looking to the payment of the additional sum; and the mere fact that he exacted such additional sum while negotiations were pending or after having agreed to accept a definite sum in full settlement denotes bad faith.

Many of the decisions specifically classify the work of the Home Owners' Loan Corporation as an emergency relief, and state that to sanction a violation of the spirit of the statute and rules would be against public policy.

Appellants further urge that this contract between the plaintiffs and defendants as to the second mortgage was later ratified by the letter written to the plaintiffs by the "principal attorney" of the corporation about a year after the release was executed by the plaintiffs, in effect recognizing the validity of the note and mortgage by informing them that it must be reduced from $1,700 to $605.95. It is said on this subject, in 13 C. J. 506, that—

"A contract *malum in se* or against public policy cannot be made valid by ratification. . . ."

We conclude that the note and mortgage sued on in this action were out of harmony with the statute and rules authorizing the work of the Home Owners' Loan Corporation and the release issued thereunder, and showed bad faith and were against public policy and therefore null and void as found by the trial court, and that the claimed ratification was not effective because of the absolute invalidity of the note and mortgage.

The judgment is affirmed.