No. 35,151

MARY W. WATSON et al., *Appellees,* v. E. P. WOODRUFF et al.,
*Appellants.*

(114 P. 2d 864)

Opinion filed
July 5, 1941.

*Jos. G. Carey, W. F. Lilleston, George C. Spradling, Henry V. Gott, George Stallwitz, A. M. Buzzi* and *Paul Donaldson,* all of Wichita, for the appellants.

*W. H. Carpenter* and *W. R. Carpenter,* both of Marion, *Barney A. Garrett* and *E. Doyle Garrett,* both of Waco, Tex., for the appellees.

The opinion of the court was delivered by

THIELE, J.: This was an action to quiet title to certain real estate in Marion county, Kansas, and grew out of the following:

A. J. Summers had been the owner of the real estate. On October 29, 1933, he died, for more than ten years prior thereto having been a person of unsound mind confined in a hospital for the insane at Cherokee, Iowa. At one time he had made a will giving his property to his sister, Myrie, but, as set out later, she died before he did, and the legacy lapsed.

J. C. Weakley was a resident of the state of Texas. By his first wife he had six children: Alyce W. Miller, Mary W. Watson, Harry Y. Weakley, Eugene Y. Weakley, Vivian Robertson and Itylene W. Sears, all of whom are the plaintiffs in this action. After the mother of the plaintiffs died, their father married Myrie Summers, but there were no children. Myrie Summers died in October, 1924, and J. C. Weakley died in October, 1926.

Upon the death of A. J. Summers, plaintiffs, acting on the assumption they were heirs at law, exercised some rights of ownership over the Kansas real estate. Upon the death of Summers, and upon the assumption he had died intestate, administration on his estate was commenced in the district court of Cherokee county, Iowa, it having jurisdiction in the premises. Sometime in the latter part of 1935 Alyce W. Miller and others of the plaintiffs received notices from the Iowa court, or the administrator thereof, that the estate was to be closed. Mrs. Miller, who lived in Brownwood, Tex., took the notice to the defendant, E. P. Woodruff, a practicing lawyer of her home city, and who had been one of her father's attorneys, and of his estate. Over a period of years A. J. Summers had written letters to his sister, Myrie S. Weakley, and, after her death, to her surviving husband, J. C. Weakley, and these letters had been delivered to attorney Woodruff. At the time the above-mentioned notice was brought to him he examined this correspondence, and found one letter directed to J. C. Weakley, dated February 24, 1925, which he believed to be testamentary in character, and which bore the signature of witnesses. In this letter Summers expressed the wish that if anything should happen to him his property should go to the J. C. Weakley family. After discussion with Mrs. Miller, it was concluded to get in correspondence with Iowa attorneys with a view to pressing the Weakley claim, and after some correspondence with

other attorneys, on October 25, 1935, Woodruff wrote to the defendant, I. R. Meltzer, setting out the situation rather fully, that the possible outcome was uncertain, suggesting the case be taken on a contingent fee, and asked whether Meltzer cared to undertake the matter. It may here be noted, it must have been evident to all concerned there was considerable doubt that a letter written by a person confined in a hospital for the insane could be established as a valid will. Meltzer answered this letter under date of November 2, 1935; stated he had investigated the law applicable to the facts; that he believed the letter of Summers to be testamentary, and that he believed it could be established as a will, and after writing of the difficulties of establishing the will, offered to take the case on a fifty percent basis, one-third to go to Woodruff. Woodruff called Mrs. Miller, who came to his office on November 7, 1935. She there read the Meltzer letter, told Woodruff she had not had time to communicate with her brothers and sisters, the time was growing short, and to accept Meltzer's proposition, and that she would write the nonresident heirs in respect to the employment. On the same day Woodruff wrote Meltzer accepting his offer and giving him certain requested information concerning the Weakley heirs. Without consulting Woodruff or the clients, Meltzer made an agreement with the defendant, John F. Loughlin, an Iowa attorney, that if Loughlin would assist him, and in the event the letter was sustained as a will, would act as administrator with the will annexed *de bonis non* of the A. J. Summers estate, without charge to the estate, Meltzer would give to Loughlin one-half of his fee.

Proceedings to have the Summers letter admitted as his will were timely commenced, and in August, 1937, it was duly admitted to probate. An appeal taken from that order was dismissed in the supreme court of Iowa in May, 1938. The record does not disclose the date, but Loughlin was appointed as administrator *cum testamento annexo de bonis non* of the Summers estate, and proceeded to administer it. Without going into any details, apparently other assets were sufficient to pay all claims and expenses, and the net estate remaining was the Marion county, Kansas, lands. Meltzer caused to be prepared and sent to Woodruff two special warranty deeds, in each of which plaintiffs and their spouses were named as grantors. By one of these deeds the grantors conveyed to Meltzer an undivided two-sixths of the real estate, and the other conveyed to Woodruff an

undivided one-sixth interest therein. These deeds were sent to Woodruff for execution by the named grantors.

By way of explanation, it may here be stated that in settling the J. C. Weakley estate a Texas lot worth about $150 had not been disposed of, but about the time the Kansas deeds were sent to Woodruff he prepared a deed for the Texas lot. He notified Mrs. Miller the deeds were ready for execution, and she and some of the grantors called at Woodruff's office, where Woodruff's secretary presented all three deeds, which they executed. Later the deeds were presented to Eugene Y. Weakley, and he refused to execute the deeds, complaining the value of the property conveyed was more than a fair fee for the services rendered. Later the other grantors protested to Woodruff they did not know they were signing deeds for the Kansas real estate. About the same time the deeds were sent to Itylene W. Sears and to Vivian Robertson, each of whom executed them, and on April 10, 1939, the Kansas deeds were recorded in Marion county.

On April 10, 1939, plaintiffs commenced their action against Woodruff, Meltzer and Loughlin to quiet title. Briefly stated, their petition charged that the deeds were obtained by fraud; that Mrs. Miller requested Woodruff, through whom they had obtained counsel to represent them in the matter of the estate of A. J. Summers, to draw papers to effectuate sale of the Texas lot, and that he prepared that deed and the two deeds to the Kansas property, and that Woodruff's secretary, under his instructions, stated the conveyances were for the Texas lot and requested they be executed in triplicate, and that Mrs. Miller, Mrs. Watson and Harry Y. Weakley did so sign, and that they did not know they signed deeds to the Kansas property, etc.; that the deeds were sent to Itylene W. Sears by mail, without full disclosure, and she signed under misapprehension of the facts; that the deeds were sent to Vivian Robertson and execution similarly procured; that the first named grantors discovered they had signed deeds to the Kansas land and repudiated their signatures to Woodruff and that the deeds were void; that they received no consideration for the execution of the deeds and the deeds were wholly without consideration; that the deeds should be set aside and held for naught and plaintiffs decreed the owners of the full undivided title to the real estate.

Plaintiffs further alleged that defendant Loughlin was administrator of the A. J. Summers estate still pending in Iowa and that notwithstanding the trust relationship in reference to the estate, he

claimed an interest in the real estate through the conveyance to Meltzer; that the claimed interest was null and void for the reasons stated and because obtained in violation of his trust.

Plaintiffs further alleged that defendants claimed some right in the real estate, the exact nature being unknown, except that they claimed to have an agreement with Mrs. Miller for fifty percent of whatever was recovered from the A. J. Summers estate. They alleged that Mrs. Miller, for herself or on their behalf, had never agreed with Woodruff for the fifty percent fee and that she had no authority to make any such agreement for them. Certain allegations respecting administration in Iowa need not be noted.

Plaintiffs further alleged they had offered to pay defendants a reasonable attorney fee for what work defendants performed in the estate; that defendants refused to accept the offer and claimed an interest in the land, and upon refusal of the plaintiffs to allow their interest, undertook to have their claim for a one-half interest allowed in the probate court of Cherokee county, Iowa, etc., and they had undertaken to cloud plaintiff's title and were endeavoring to have the Iowa proceedings placed of record in Marion county, Kansas, and should be enjoined from so doing.

Woodruff filed a long answer, setting up fully his version of the entire matter, alleging regularity and validity of the deed conveying the undivided one-sixth interest to him and he sought to have his title to that interest quieted in him. Meltzer and Loughlin filed a joint answer setting up the entire matter and their connection with it, the regularity and validity of the deed conveying the undivided two-sixths interest to Meltzer; the rights as between Meltzer and Loughlin; that Meltzer was the owner of such interest, subject only to the rights of Loughlin and asking that Meltzer's title be so quieted. Plaintiff filed replies making admissions and denials which need not be specifically set forth. It is sufficient to say issues were joined to cover matters considered at the trial and hereafter discussed.

At the trial evidence in support of the various contentions was received and the trial court made twenty-four findings of fact, many of them covering the history of the events leading up to the suit and not in dispute. There was no great dispute except with reference to the execution and delivery of the deeds to Woodruff and Meltzer. Other facts will be mentioned later if need be. The trial court concluded the deed to Woodruff was never completed or law-

fully delivered and never became effective as a conveyance to him; it concluded likewise as to the deed to Meltzer; it concluded the agreement to convey an interest to Loughlin, who was administrator of the A. J. Summers estate, was contrary to public policy and void, and that plaintiffs were entitled to judgment. Defendants' motions to modify, set aside and make additional findings of fact and to substitute conclusions of law and for a new trial were overruled, and defendants perfected their appeal to this court, their specifications of error covering the matters hereafter discussed.

Although the petition admitted the source of their title and the rendition of legal services by Woodruff and Meltzer and that plaintiffs had offered to pay for what service they performed, and although the court found that Mrs. Miller, though not authorized by any of the plaintiffs to make the particular contract with Woodruff and Meltzer, represented herself and her brothers and sisters in renting and collecting rents on property which plaintiffs owned in Kansas and Texas, and had consulted Woodruff with respect to establishing as a will a letter of A. J. Summers indicating his property should go to the Weakley family (plaintiffs) and that Woodruff had communicated with Meltzer, who offered to undertake the matter for a fifty percent contingent fee, and that Meltzer's written offer had been read by Mrs. Miller, who told Woodruff she had not had time to hear from her brothers and sisters, but for him to proceed with the case on the basis outlined by Meltzer and that that had been done, all with the result that title had been vested in plaintiffs, the trial court, in effect, found that Woodruff and Meltzer had no interest in the real estate and quieted title against them. If they had no title, it was by reason of the contract between Meltzer and Loughlin made without the knowledge of either the plaintiffs or of Woodruff that if Loughlin would assist Meltzer and in the event the A. J. Summers letter was established as his will Loughlin would act as administrator *cum testamento annexo de bonis non* without charge to the estate, in consideration of which Meltzer would give Loughlin one-half his share under the contingent fee agreement, the contract which the trial court found to be contrary to public policy and void. Assuming the conclusion to be true, it is difficult to see how it affected the interest of Woodruff, or that his interest could be cut off even though there might be some difficulty concerning the execution of the deed to him. As the matter is presented here, especially by appellee, the alleged unlawful contract affected both deeds, the one

to Meltzer and the one to Woodruff, and we shall not, in our discussion, make any distinction between the two deeds or the grantees therein.

We may restate the facts briefly. Mrs. Miller directed Woodruff to proceed in an attempt to prove the letter as a will; thereafter she authorized acceptance of Meltzer's proposition to take the case on a fifty percent contingent basis, that percent to go two-thirds to Meltzer and one-third to Woodruff. Meltzer agreed with Loughlin that if Loughlin would assist him, and if the letter was established as a will, Loughlin would act as administrator without charge to the estate for that service. The making of this latter agreement was without the knowledge of either the plaintiffs or Woodruff. The will was established and the rights of the Weakley heirs to the Summers property, including the Kansas land, were established. Loughlin acted as administrator without charge to the estate. As stated above, the deeds to convey title to Woodruff and Meltzer were executed by all their heirs except Eugene Y. Weakley, were recorded, and then attacked in the instant action.

Appellants contend there was nothing wrong with the above chain of circumstances or any of its parts; that contingent fee contracts are not illegal or contrary to public policy (*Stevens v. Sheriff*, 76 Kan. 124, 90 Pac. 799) and have been recognized by this court as proper (*Joyce v. Bank*, 90 Kan. 745, 136 Pac. 232; *Sedbrook v. Mccue*, 104 Kan. 813, 180 Pac. 787); that an attorney may at his own expense employ other attorneys to assist him (*Parke v. Morin*, 304 Mass. 35, 22 N. E. 2d 603; 7 C. J. S. p. 939); that what was done was in no sense a trafficking in the property of the estate, and that the trial court erred in holding the contract was contrary to public policy and void. Appellee's argument is that the agreement between Meltzer and Loughlin was secret and under it they undertook to appropriate a large portion of the estate to their own use in payment of fees for services performed by them as attorneys for the beneficiaries under the will. We shall notice briefly the cases relied on by them.

In *Frazier v. Jeakins*, 64 Kan. 615, 68 Pac. 24, where it was held that a trustee will not be permitted directly or indirectly to make profit for himself out of the trust estate, and that a guardian of a minor cannot buy at his own sale, nor can his wife or her husband, and that nonexistence of fraud and full payment of the consideration will not validate the sale, it clearly appears that the offending guardian performed all of the condemned acts after he was appointed

guardian, and that he trafficked with the assets of the estate to his own advantage and to the disadvantage of the beneficiaries.

In *Judy & Gilbert v. Railway Co.*, 111 Kan. 46, 205 Pac. 1116, Gilbert was the public administrator of Wyandotte county, Kansas. He had himself appointed as administrator of the estate of Holbrook, who was killed in a railroad accident, and then contracted with himself and his law partner to bring an action for wrongful death on a contingent basis. Later the decedent's mother saw the plaintiffs and signed a contingent fee contract. Both contracts were that plaintiffs were to get no compensation unless there was a recovery. Subsequently, the father of the decedent was appointed administrator in Missouri and settled the liability for $1,500. The plaintiffs then brought their action against the defendant to recover $750 under their contract and under a notice of attorney's lien duly served and filed. The trial court overruled defendant's demurrer and later judgment was directed for plaintiffs. On appeal this court reversed, holding that an administrator cannot contract for his personal advantage concerning any matter connected with the estate. Other reasons for reversal need not be noted.

Our attention is also directed to *Alumbaugh v. Hedges*, 125 Kan. 449, 265 Pac. 50. An adequate statement of the facts would consume too great space and reference is made to the opinion. Hedges, as a result of some preliminary moves, filed an application to probate a will and for his appointment as executor or as ancillary administrator, and two weeks thereafter consummated a private bargain with the widow of the testator, the existence of which he did not disclose. This court held that to all intents he was the executor and administrator at the time he contracted for the widow's interest. He used that interest to his own advantage. This court called attention to the two cases mentioned above, and to others, and followed the rule stated that a trustee may not traffic to his own advantage in the estate under his charge.

In *Crowley v. Nixon*, 132 Kan. 552, 296 Pac. 376, where an executor dealt with legatees under a will to his own advantage, a review was made of the above cases, and some others, and it was held that one acting as executor under duty to administer an estate cannot legally buy property at his own sale and for his own advantage, and that such a purchase is invalid and may be repudiated and set aside at the instance of a person in interest.

*In re Estate of Brown*, 147 Kan. 395, 76 P. 2d 857, is also cited.

So far as need be noticed, the facts were that one Brown, of Junction City, went to Wyoming to see about the estate of his deceased brother, and there died. He left a will which was admitted to probate in Geary county, Kansas, and under which Schreckler was appointed executor. He qualified and with consent of the probate court went to Wyoming where he filed an application for the probate of his decedent's will. In the meantime, an administrator had been appointed in Wyoming for the brother's estate. A nephew of both decedents was the ultimate sole beneficiary. A controversy arose as to Schreckler's right to have the Kansas will admitted in Wyoming, and an agreement was made between Schreckler and the nephew that the nephew should pay Schreckler $1,750 and he would withdraw the application. That was done, subsequently the note was paid, and the question of illegality arose when it was sought to surcharge Schreckler in the Geary county probate court. We are not concerned further with the facts. Following the Hedges case, *supra,* this court held, among other things, that an executor could not traffic to his own advantage in an estate under his charge, and surcharged him with the unlawful exaction.

*Cook v. Donner,* 145 Kan. 674, 66 P. 2d 587, also relied on by appellees, involved validity of a note and mortgage, the giving of which was agreed on but concealed from the Home Owners Loan Corporation and contrary to representations made to it as an inducement for a loan from it. It was held the note and mortgage sued on were out of harmony with the statutes authorizing the Home Owners Loan Corporation to make loans, showed bad faith, were against public policy and void.

In their argument in connection with the deeds hereafter mentioned, appellees cite some further cases dealing with the general proposition that an attorney or agent may not make any agreement for his principal by which he is to receive a personal advantage. They will not be separately mentioned. All have been examined and are clearly distinguishable from the case at bar.

We adhere to the rules laid down in the above cases, but now examine their applicability to the facts in the case at bar. It is observed that in all cases relied on by appellees, except *Cook v. Donner,* supra, the contract or transaction denounced was made or occurred while the fiduciary relation existed, and in each case the one standing in the position of a trustee acted to his own advantage and to the consequent disadvantage of the beneficiary. In the case be-

fore us, the original agreement made was that Woodruff and Meltzer were to prosecute their client's claim on a fifty percent contingent fee, and in so doing of course they were obligated, in good faith, to procure the utmost for their clients. Under that contract, whatever was for the benefit of the clients would necessarily be for the benefit of the attorneys. Under the contract made, it clearly appeared that Woodruff was to get one-third of the contingent fee and Meltzer two-thirds. Looking only to Meltzer's connection, had he agreed with Loughlin that for Loughlin's assistance he would give him one-half his fee, certainly there could have been no objection, for nothing about that arrangement would have relieved Meltzer of any duty he owed his clients, nor, in the absence of an additional agreement with the clients, would it have increased the amount he was to receive from the clients. The contract is said to be subject to condemnation because Meltzer, while the relation of attorney and client existed, agreed with Loughlin that if Loughlin would assist and the will was established, Loughlin would act as administrator, etc., without charge to the estate. Bearing in mind that it would be necessary to execute any will admitted to probate, and absent any agreement to the contrary, the executor or, as here, the administrator *cum testamento annexo*, would be entitled to an allowance for his services as such, it appears that the agreement was of positive benefit to and for the interests of the clients, for all that could be saved in the way of expense increased the net estate. May such an arrangement be said to be trafficking with the estate, or should it be said under the circumstances obtaining that because the arrangement increased the amount to be divided so that the attorneys' fees would be larger, the contract is subject to condemnation? If so, why should not any contract for a contingent fee be stricken down? Appellees lay stress on the fact that clients were not advised of the arrangement. The only part of the arrangement that could have been secret was that Loughlin should not be paid for services as administrator *cum testamento annexo*. That part of the agreement was not trafficking in the estate, its effect was not adverse to the interests of the clients, and considering the interests of the clients and all the attorneys interested, was of mutual benefit to all of them. It did not have the effect of advantage to Loughlin, Meltzer or Woodruff with corresponding disadvantage to the clients. As a result of the contracts in all their various parts and performance thereunder, plaintiffs have been judicially found to be legatees under the will of A. J. Summers,

with a net estate larger than if the contract had not been made. If this contract is against public policy, likewise any contract of a trustee to get services performed without charge to his beneficiaries, although the effect is to increase income on which his charge for services is based, is also subject to condemnation. Although we think it would have been advisable for Meltzer to have acquainted his associate Woodruff and the clients of the agreement he had made with Loughlin, we think also that his failure to do so is not decisive of the matter, but that all the facts and circumstances must be considered. We are also of opinion that *Cook v. Donner,* supra, is clearly distinguishable on the facts from the case at bar. It follows from what has been said that the contract for services was not contrary to public policy nor invalid and void.

Having concluded that the contract was not subject to condemnation as being against public policy, we take up the extent of its binding effect on the various plaintiffs. The trial court found by one finding that Mrs. Miller was never authorized by her co-legatees to act for them or to bind them under any contract for services in the A. J. Summers estate. However, as previously indicated, it also found that at all times concerned in the controversy Alyce W. Miller represented her brothers and sisters in renting and collecting rents of property owned by them in Marion county, Kansas, and in Texas. Although appellant makes some complaint of this finding, appellees make none. Other findings detail the facts with reference to her seeing Woodruff; that Woodruff communicated with Meltzer; that Meltzer agreed to undertake the matter for a fifty percent contingent fee to be divided as previously indicated; that Mrs. Miller had not had time to hear from the other plaintiffs; that she requested Woodruff to proceed on the basis outlined by Meltzer, and that Woodruff so advised Meltzer, and that Mrs. Miller was advised of the correspondence and said she would write to the nonresident plaintiffs. Even though the finding of agency might be subject to criticism as being beyond the evidence, it does clearly appear from her course of dealings with the property of herself and the other plaintiffs that she had apparent authority to deal for them. So far as the record discloses, no one of them ever disputed her authority to proceed in protection of their interests in the A. J. Summers estate, the only complaint was she was not authorized to agree to the contingent fee contract. When the deeds, hereafter to be mentioned, were prepared for execution, the only objection was that the fee was too high, and

that is stated in the petition, as is the fact the plaintiffs offered defendants "a reasonable attorney fee for what work they have performed in this estate." Presumably the plaintiffs determined what a reasonable fee was. As we view the matter, it comes down to this: Plaintiffs, if they had not previously authorized the specific contract made, including the portion pertaining to a contingent fee, did permit their agent to make a contract in 1935, the performance of which produced to them in 1938 property of substantial value, which they have accepted and are in this action endeavoring fully to retain. As has been said repeatedly, it is elementary that where a principal, either expressly or impliedly, accepts the fruits of a contract made for him by his agent, he must accept its burdens; he must repudiate the whole transaction or he must accept it as a whole; he cannot take the benefits and not assume the burdens. For example, see *Flitch v. Boyle,* 149 Kan. 834, 837, 89 P. 2d 909, and *Brown v. Parmalee,* 130 Kan. 165, 173, 285 Pac. 563, and cases cited. There is no doubt but that under the facts and the law applicable thereto, the plaintiffs were bound by the contract for services, and that under that contract the defendants Woodruff and Meltzer between themselves had a one-half interest in the net proceeds recovered.

It has been noted the trial court concluded, as a matter of law, the deeds from all of the plaintiffs except Eugene Y. Weakley, one conveying to Woodruff an undivided one-sixth, the other conveying to Meltzer an undivided two-sixths of the involved real estate, were never completed nor lawfully delivered. We need not set out the evidence pertaining to the execution and delivery of the deeds, nor discuss the law applicable thereto. The contract having been established, and performance under it proved, the interests of the defendants, Woodruff and Meltzer, became fixed. Even though the execution and delivery of the deeds may be subject to criticism, which appellants strenuously deny, and even though they may not be fully effective to vest in the grantees their respective interests in the legal title, the fact they may not do .so does not have any effect on the equitable title of the grantees, nor permit plaintiffs to have a decree quieting title against them or anyone claiming under them or either of them. The answers of the respective defendants set up fully the facts with respect to the contract with plaintiffs and its performance, the evidence and the facts as found by the trial court disclose performance, and even though the legal title evidenced by the deeds may not have been fully sufficient, there is no doubt of defendants' equi-

table interest, and their titles should have been quieted as prayed for in their respective answers.

The judgment of the trial court is reversed, and the cause remanded with instructions to the trial court to render judgments in favor of the appellants quieting their titles as prayed for.

Hoch, J., not participating.