No. 42,593

DALE M. BRYANT, *Appellee,* v. EL DORADO NATIONAL BANK, *Appellant.*

(370 P. 2d 85)

Opinion filed April 7, 1962.

*L. J. Bond,* of El Dorado, argued the cause, and *Robert M. Bond,* of El Dorado, was with him on the briefs for the appellant.

*Morris H. Cundiff,* of Wichita, argued the cause, and *Glenn J. Shanahan,* and *Orlin L. Wagner,* all of Wichita, and *Ervin E. Grant,* of El Dorado, were with him on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, C. J.: This was an action by an attorney to recover money on a contingent fee contract where, under appropriate pleadings joining issues on all questions relating to liability, the case was tried by the trial court which, after taking the cause under advisement, rendered a judgment in favor of the plaintiff, Dale M. Bryant, and against the defendant, El Dorado National Bank, for a sum

amounting to twenty-five per cent, including interest at six per cent, of an amount the Bank had collected from one L. D. Davidson on a promissory note which had been subsequently enhanced by a judgment plaintiff had obtained for the Bank against the maker of such note. The defendant appeals from the judgment rendered against it and from the order overruling its motion for a new trial.

The facts regarded as essential to disposition of the questions raised on appeal will be highly summarized and stated in accord with our version of the import to be given the evidence of record.

The employment of appellee was consummated with a letter, dated November 29, 1943, from appellant's duly authorized agent, L. J. Bond, an attorney and officer of the Bank. So far as here pertinent that letter reads:

"Enclosed you will find a court cost deposit check in the amount of $15.00 and you are authorized to file suit on this note at any time you think it is best to do so.

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"The bank will allow a contingent fee of twenty-five per cent of the amount collected, or will pay a fee for securing a default judgment plus the usual collection fee for any amount of the judgment that is collected   .   .   ."

After receipt of the foregoing letter, and on December 10, 1943, appellee filed an action upon the note in the district court of Sedgwick County. Later and on January 22, 1944, he procured a default judgment in favor of the appellant and against Davidson in the amount of $8,340.65, with interest at six per cent from that date.

In January 1944, appellee caused an execution to be issued on the judgment and later, by way of a garnishment proceeding, collected the sum of $126.61, which was remitted to Mr. Bond in a letter dated May 24, 1944. The next day this remittance was acknowledged by Mr. Bond in a letter containing the following statements:

"Receipt is acknowledged of yours of May 24 enclosing check for $126.61 in the above case.

"Enclosed is draft for $31.65 in payment of your fee on the amount collected. On future collections it will be entirely satisfactory for you to deduct twenty-five percent of the amount collected at the time you make remittance."

Thereafter, by praecipes filed with the clerk of the district court of Sedgwick County, appellee caused four executions to be issued on the judgment. The first of these praecipes was filed with the clerk on May 5, 1947; the second on January 20, 1949; the third

on April 22, 1952; and the fourth on January 16, 1954. Nothing was realized on the judgment under the executions.

Between November 29, 1943, and June 23, 1958, in attempting to satisfy the judgment, appellee had numerous conversations and conferences with the judgment debtor. In addition, in an effort to find property of the debtor which might be subject to execution, appellee had many conversations with the sheriff and a number of interviews with individuals whom he had reason to believe might have some knowledge of property belonging to the debtor which could be reached by execution. All of these activities took considerable time and effort.

As late as June 23, 1958, the judgment debtor was in appellee's office endeavoring to negotiate a settlement of the judgment but no settlement was effected.

On or about April 15, 1958, the appellant, without any notice to appellee, without discharging him, and without otherwise terminating his employment, employed Fred W. Hinkle, an attorney at Wichita, to collect the judgment and immediately thereafter such attorney commenced to negotiate with Davidson for its compromise and settlement.

It appears these negotiations were being carried on at the time Davidson was in appellee's office on June 23, 1958. In any event Mr. Hinkle effected a settlement of the judgment with Davidson on July 1, 1958, for the sum of $7,500.00 and court costs. This was at a time when appellee had no knowledge whatsoever of the negotiations or of the settlement. Indeed the first notice he had regarding the settlement was when he attempted to again issue execution on the judgment and discovered that it had been satisfied and released of record by the appellant.

Subsequently, having ascertained that appellant had settled the judgment for the amount and in the manner herein indicated, appellee made demands on appellant for payment of a fee under the terms of his contingent fee contract and when those demands were refused instituted this lawsuit.

Appellant's several specifications of error, although differently worded, may be summed up in one statement, i. e., that the judgment of the trial court was in error and should be reversed and judgment directed in its favor on the theory that appellee failed to prove a cause of action under his contingent fee contract. Proceeding further, it may be stated that, without citing a single Kan-

sas decision to support its position, all contentions advanced by appellant in support of its position are in effect based on the premise that under the existing facts and law appellee could not recover a contingent fee under the terms of the contract in question.

Conceding that appellant's diligent counsel have made reference to many statements in legal treatises indicating there may be some states where the law with respect to the validity of, and the force and effect to be given, a contingent fee contract is different than it is in Kansas, we are not inclined to here write a thesis on the law applicable to the rights and liabilities of attorneys and clients under such contracts. It should, however, be stated such contracts, when fairly and understandingly made, have long been recognized as valid and enforceable in this jurisdiction. (See, *e. g.*, *Stevens v. Sheriff*, 76 Kan. 124, 90 Pac. 799; *Sedbrook v. McCue*, 104 Kan. 813, 180 Pac. 787; *Graham v. Elevator Co.*, 115 Kan. 143, 222 Pac. 89; *Watson v. Woodruff*, 154 Kan. 61, 67, 114 P. 2d 864; *Grayson v. Pyles*, 184 Kan. 116, 118, 119, 334 P. 2d 341.) Nor are we disposed to enter into a prolonged discussion of arguments advanced by appellant's counsel to the effect appellee was limited in his remedy in this case to *quantum meruit* or damages for breach of the terms of the involved contingent fee contract.

It suffices to say, we are convinced all questions raised by appellant were fully determined by this court, contrary to its position in the instant case, in *Joyce v. Bank*, 90 Kan. 745, 136 Pac. 232, under facts and circumstances so similar to those here involved that such decision must be regarded as a controlling precedent which completely refutes all contentions advanced to the effect appellee failed to prove a cause of action under his contingent fee contract.

In *Joyce v. Bank*, supra, with facts and circumstances so similar they cannot be said to contain materially distinguishing features (see pages 746 to 749, incl. of the opinion), this court recognized the validity of a like contract and expressed its views with respect to the rights and liabilities of the parties under its terms in the following statement:

"Without undertaking to prescribe a measure of conduct applicable generally to cases of this character, the court is of the opinion that the plaintiff was entitled to compensation for his services. The debt belonged to a well-known class, and the plaintiff gave it the time, effort, skill and judgment which such debts demand and which business men expect. Other expedients being of no avail the legal obligation was not only preserved but its character was improved by raising it from simple contract to judgment. By this means the

debt was rendered vastly more secure even if it were not secured in the sense of Sponable's letter. Nothing then remained to be done to effect collection except to keep the judgment alive until property came into the hands of the judgment debtors which the judgment would threaten, and the plaintiff did protect it against dormancy until the defendant severed business relations with him. Of course it made no difference whether the money were paid directly to him or to the defendant.

"The amount of the plaintiff's compensation was determined by the jury from the proof. The debt was apparently hopelessly bad. Whatever the bank realized was clear gain. If nothing were realized the plaintiff lost all his work. Under these circumstances the court is not prepared to say that an equal division of the proceeds is unconscionable.

"The action was based on contract. Nothing was due the plaintiff until collection was made. No cause of action accrued until that time and consequently recovery was not barred by the statute of limitations.

"The foregoing disposes of the merits of the controversy and the principal contentions of the defendant . . ." (pp. 749, 750.)

and then affirmed the trial court's action in rendering a judgment for the plaintiff attorney and against the defendant bank in accord with the terms of the contract.

After a careful examination of the entire record, and serious consideration of all arguments advanced by appellant to the contrary, we are convinced that, under the particular facts, conditions and circumstances existing in the case at bar, our decision in *Joyce v. Bank*, supra, to which we adhere, requires an affirmance of the trial court's judgment and we so hold.

To a lesser degree, the same holds true of *Carter v. McPherson*, 104 Kan. 59, 64, 65, 177 Pac. 533, which, although factually different, generally supports the conclusion just announced and particularly refutes all claims made by appellant to the effect that by reason of its settling the claim in question appellee was relegated to recovery on *quantum meruit* or for breach of contract.

Having reached the conclusion just announced we have no difficulty, whatsoever, in concluding the evidence of record, although somewhat conflicting, was ample to sustain the trial court's judgment and completely refutes appellant's theory that appellee failed to prove a cause of action under his contingent fee contract.

The judgment is affirmed.